### STATE BOARD OF EDUCATION *v.* CITY OF ABERDEEN.

1. CONSTITUTIONAL LAW.  *Municipal charter.  Contract.*
    A municipal charter is not a contract, within the sense of the Federal Constitution, between the municipality and the State; nor has the municipality such proprietary interest in money raised by liquor-licenses taxed under its charter, as prevents subsequent legislation from giving another direction to such money. But, under authority conferred by the charter, the municipality may come under such engagements with third persons as to create a contract, respecting which subsequent legislation will be so far restrained that it cannot impair perfected rights.

2. MUNICIPAL CHARTERS.  *Repealed by implication.*
    The repugnancy and inconsistency between the charters granted to cities and towns in this State prior to the Constitution of 1869, devoting money derived from liquor-licenses to local town or city purposes, and the provision of that Constitution directing the creation of a common-school fund, with the common-school system embodied in the Code of 1871, and the legislation amendatory thereof, devoting the money arising from liquor-licenses to the common-school fund, is so palpable, that said charters on the one hand, and said Constitution and laws on the other, cannot both stand, but the repugnant feature of the charters must give way.

3. SAME.  *Repealed by consolidated charter.*
    Where there is a city charter which has been several times amended, and a very elaborate and completely new and independent charter, intended to constitute a perfect system within itself, is then granted to the city, the new charter operates a repeal of all omitted portions of the former charter and amendments, although it contains no express words of repeal.

4. LIQUOR-LICENSE TAXES.  *School fund.*
    A city is liable for the amount which it has collected and had paid into its treasury, of liquor-license money; which is not its own, but can be recovered by the State for the use of the State Board of Education.

ERROR to the Circuit Court of Monroe County.

Hon. J. A. GREEN, Judge.

The case is stated in the opinion of the court.

*W. F. Dowd,* for the plaintiff in error.

1. The State Board of Education had power to sue for the license-taxes collected and paid into the city treasury. Code 1871, sects. 1996–1998. See sects. 161, 2462–2472. See sect. 1342.

2. The charter of 1837, which, it is contended, was decided, in *Saunderson* v. *Aberdeen,* 8 Smed. & M. 663, and *Aberdeen* v. *Mayor, etc.,* 13 Smed. & M. 646, to confer on the city a vested right to the license-taxes, was repealed by the charter of 1856 ; subsequent to which the city did not have a vested right, beyond the power of the Legislature to take away. The Constitution of 1869 repeals all privileges and powers as to liquor-licenses. *Moon* v. *The State,* 48 Miss. 158 ; *Yazoo City* v. *The State,* 48 Miss. 443 ; *State Board* v. *West Point,* 50 Miss. 644. The State government has unlimited power over the sale, by retail, of liquors, or may prohibit such sale altogether. It is against the policy of the State to surrender this power, as a matter of morals and police. *Rhorbacher* v. *City of Jackson,* 51 Miss. 741 ; Cooley's Const. Lim. 191–193, notes 2, 3. The rights and franchises of a municipal corporation are granted by the State, and it does not grant such a contract as is limited by the Constitution of the United States. Such rights are never vested. *The People* v. *Morris,* 13 Wend. 331. The police power of a State is not affected by the Constitution of the United States. All contracts and all rights are subject to this power. Cooley's Const. Lim. 574, 575, note 2, p. 582 ; *East Hartford* v. *Hartford Bridge Co.,* 10 How. (U. S.) 533.

*T. C. Catchings,* Attorney-General, on the same side.

1. There is no force in the position that the town, under the Constitution of the United States and the Constitution and laws of this State, is entitled to recover, retain, and use for general purposes all moneys arising from liquor-licenses. The charter of 1837 had been six times amended prior to 1854, when an act was passed entitled "An act to amend and

to reduce into one the act incorporating the town of Aberdeen, and the several acts amendatory thereto." Acts 1854, p. 206. An inspection of it will show, not only that it was intended to repeal all previous acts on the subject, and thereafter to constitute the sole law of incorporation, but that it actually destroyed one corporation and created another, in many essential respects different. *Bellows* v. *President, etc.*, 2 Mason, 84; *Myers* v. *Marshall County*, 55 Miss. 344; *Swann* v. *Buck*, 40 Miss. 277; *Mobile & Ohio R. Co.* v. *Weiner*, 49 Miss. 739. The charter of 1854 makes no disposition of the money arising from licenses; and, such being the case, the decisions of the High Court of Errors and Appeals, construing the old charter, can have no effect upon this case. By the Code of 1857, p. 197, it was provided that the corporate authorities of every incorporated city or town having a population of two thousand or more should have power to grant licenses to retail, the proceeds of which should be for the use of the city or town; and detailed regulations were prescribed as to how they should be issued, etc. The act was applicable to the city of Aberdeen. The Legislature, without infringing any charter right, could make such disposition as it chose of the liquor-license money. Exercising that authority, the Code of 1871, sect. 542, required all license-money received by any incorporated city or town to be paid into the State treasury for the use of the common-school fund. That was the law under which, and in accordance with which, the city's power to grant licenses was exercised.

2. But whether the charter of 1837 was repealed by that of 1854, or not, the right to the liquor-license money was a power which the State had the right to revoke, and it was revoked by the Constitution of 1869, the Code of 1871, and the other legislation subsequent thereto. Cooley's Const. Lim. 239, 283, 581; *East Hartford* v. *Hartford Bridge Co.*, 10 How. 535; *Bailey* v. *Mayor*, 3 Hill, 541; *St. Louis* v. *Russell*, 9 Mo. 507; 4 Wheat. 663; 2 Kent's Comm. 305; 1 Dill. on Mun. Corp., sect. 36; *Darlington* v. *Mayor*, 31 N. Y. 164.

3. The city is liable for the money in this action.   Code 1871, sects. 2457, 2460, 2469 ; *State Board of Education* v. *West Point,* 50 Miss. 643 ; *Holly Springs* v. *State Board of Education* (MS.) ; *Methodist Church* v. *Vicksburg,* 50 Miss. 601.

*Baxter McFarland,* for the defendant in error.

1. The city cannot be made liable on an implied *assumpsit,* under its charter.   Municipal corporations can exercise only these powers : " First, those granted in *express words;* second, *those necessarily or fairly implied* in, or incident to, the powers expressly granted ; third, those *essential* to the declared objects and purposes of the corporation, — not simply *convenient,* but *indispensable.*   Any fair, reasonable doubt concerning the existence of the power is resolved against the corporation, and the power is denied."   1 Dill. on Mun. Corp., sects. 9b, 12, and note, sect. 55, and note 1, p. 174 ; 2 Kent's Comm., marg. p. 299, and note ; *Head* v. *Insurance Co.,* 2 Cranch, 127 ; 12 Wheat. 64, 68 ; *Spaulding* v. *Lowell,* 23 Pick. 71, 74 ; *Thompson* v. *Lee County,* 3 Wall. 330 ; *Thomas* v. *Richmond,* 12 Wall. 349, 353 ; *Petersburg* v. *Metzger,* 21 Ill. 205 ; *New London* v. *Brainard,* 22 Conn. 552 ; 13 Mass. 272 ; 2 Denio, 110 ; 15 Conn. 475, 501 ; 3 Ala. 137 ; 28 Ala. 577 ; 6 Ala. 899 ; 11 Pick. 396 ; 1 Metc. 284–286 ; 12 Cush. 105 ; 16 Mass. 48 ; 7 Metc. 438 ; 14 Me. 375 ; 7 N. H. 300 ; 2 N. H. 253 ; 35 N. H. 189 ; 2 Dill. on Mun. Corp., sect. 749, and notes.   Courts adopt a strict, rather than a liberal, construction of powers.   1 Dill. on Mun. Corp., sect. 55 ; 2 Kent's Comm., marg. p. 299, and notes ; *Minturn* v. *Larue,* 23 How. (U. S.) 435, 436 ; 3 Wall. 320 ; 12 Wall. 349 ; 35 Miss. 189 ; 5 Ind. 38.   While it is true that a corporation may be bound by an implied contract, in order that it may be thus bound the contract must be within the scope of its powers.   2 Kent's Comm., marg. p. 291, note *a;* 1 Dill. on Mun. Corp., sect. 383, and note ; 2 *ib.,* sects. 766–768.   If the matter in respect of which the contract is made is beyond the scope of the corporate powers, no promise can be implied.

1 *ib.*, sect. 383, note 2 ; *Seibrecht* v. *New Orleans*, 12 La. An.
496 ; 13 Pick. 343 ; 4 Pick. 149 ; 5 Mass. 294 ; 2 Dill. on Mun.
Corp., sects. 766–768.   When a mode of exercising a power
is prescribed, it must be pursued, or the contract is void.   1
Dill. on Mun. Corp., sect. 373, and note 1 ; 2 Cranch, 127 ; 19
La. An. 667 ; 19 N. J. Eq. 412 ; 20 Md. 1 ; 12 Wheat. 64, 68 ; 7
Gray, 12 ; 8 Ohio St. 564 ; 60 Pa. St. 464 ; 16 Cal. 225, 282,
591 ; 21 Cal. 351 ; 20 Cal. 90.   A municipal corporation can-
not ratify an unlawful contract that its officers or agents
make.   The payment of this money into the city treasury was
positively interdicted.·   Code 1871, sect. 2469.   It was re-
ceived, not only without law, but against law, and the city is
not liable.   *Collector* v. *Hubbard*, 12 Wall. 1 ; 12 Wall. 349 ;
1 Dill. on Mun. Corp. 9, sect. 384 ; *Argenti* v. *San Francisco*,
16 Cal. 255, 282 ; *Thomas* v. *Richmond*, 12 Wall. 349 ; *Curtis*
v. *Fiedler*, 2 Black, 478 ; 1 Dill. on Mun. Corp., sect. 447,
and note ; 2 *ib.*, sect. 750, and note 2, p. 856 ; *Herzo* v. *San
Francisco*, 33 Cal. 134.

2.  The city has a right, under its charter and the laws, to col-
lect and appropriate to its own use the money arising from
the sale of liquor-licenses within the corporate limits.   The
right has not been disturbed by the new Constitution, the
amendments of 1876, or any laws passed since or before their
adoption.   Acts 1837·; 8 Smed. & M. 663 ; 13 Smed. & M.
645 ; Acts 1848, p. 477.   The business of the city has been
predicated since their delivery upon these decisions, and it
has used the money arising from liquor-licenses, relying on
the doctrine of *stare decisis*.   23 Miss. 496 ; 2 Smed. & M.
617 ;  1 Kent's Comm. 475 ;  Cooley's Const. Lim. 50.   The
act of 1854 does not repeal the old charter.   *The State* v.
*Mobile*, 24 Ala. 701 ; *Girard* v. *Philadelphia*, 7 Wall. 1 ;
*The Commonwealth* v. *Worcester*, 3 Pick. 474 ; *Trustees, etc.*,
v. *Erie*, 31 Pa. St. 515, 517 ; 1 Dill. on Mun. Corp. 53 ;
*St. Louis* v. *Alexander*, 23 Mo. 483 ; 1 Dill. on Mun.
Corp., sect. 53, generally ; *Matter of Egypt Street*, 2 Grant
Cas. 455 ; *Hayward* v. *Savannah*, 12 Ga. 404 ; *Simpson* v.

*Savage*, 1 Mo. 359 ; 1 Dill. on Mun. Corp., sect. 54, and note ; *Bond* v. *Hiestand*, 20 La. An. 139 ; *Railroad Co.* v. *Alexandria*, 18 Gratt. 176 ; 25 Md. 541 ; *Smith* v. *Vicksburg*, 54 Miss. 615 ; *Ottawa* v. *County*, 12 Ill. 339 ; 2 Grant Cas. 455 ; *The State* v. *Branin*, 3 Zab. 484 ; 33 N. J. L. 57 ; 1 Dutch. 154 ; 5 Dutch. 170 ; 20 N. J. Eq. 360 ; 16. Pick. 504 ; 18 Gratt. 176 ; *Green* v. *Weller*, 32 Miss. 650 ; Cooley's Const. Lim. 55 *et seq*.

*Murphy, Sykes & Bristow*, on the same side.

1. We submit that the corporation of Aberdeen could not become liable in *assumpsit* for money had and received upon an *implied* promise, when it could not legally have made an *express* contract. 1 Dill. on Mun. Corp., sects. 9, 55 ; 2 *ib*., sect. 766 ; *Railroad Co.* v. *New York*, 1 Hilt. 562 ; *Herzo* v. *San Francisco*, 33 Cal. 134 ; *Sutton* v. *Board of Police*, 41 Miss. 239 ; Code 1871, sects. 2457, 2460, 2469 ; *Baily* v. *New York*, 3 Hill, 538 ; *Ferguson* v. *Bobo*, 54 Miss. 121 ; *Curtis, Admr.*, v. *Feidler*, 2 Black, 478 ; *Robinson* v. *City Council*, 2 Rich. 317 ; *Smith* v. *Hutchinson*, 8 Ind. 260 ; *Elston* v. *Chicago*, 40 Ill. 514 ; *Thomas* v. *City of Richmond*, 12 Wall. 356 ; *Argenti* v. *City of San Francisco*, 16 Cal. 255.

2. Sect. 6 of art. 8 of the Constitution of 1869 was not intended to take away the right of the city of Aberdeen to receive and use the money arising from licenses to retail liquors ; and neither this section as originally adopted, or as amended January 18, 1876 (Acts 1876, p. 2), nor the laws passed thereunder, *could* constitutionally take away this right. How. & Hutch. Dig. 187 ; Acts 1842, p. 109 ; Acts 1846, p. 100 ; *Aberdeen* v. *Saunderson*, 8 Smed. & M. 663 ; Acts 1848, p. 477 ; *Aberdeen Female Academy* v. *Aberdeen*, 13 Smed. & M. 645 ; Acts 1854, p. 216 ; Const. 1869, sect. 6, art. 8 ; Code 1871, p. 664 ; Acts 1876, p. 2 ; Acts 1846, sect. 7 ; *Brown* v. *County Commissioners*, 21 Pa. St. 27 ; Code 1857, p. 197, art. 2 ; *Drysdale* v. *Pradat*, 45 Miss. 447 ; *Yazoo City* v. *The State*, 48 Miss. 442 ; *County* v. *Savings-Bank*, 92 U. S. 633 ; *Benson* v. *New York*, 10 Barb. 244, 245 ; *Dartmouth College*

v. *Woodward*, 4 Wheat. 563, 570, 576 ; *Home of the Friend-less* v. *Rouse*, 8 Wall. 430 ; Sedgw. on Stat. & Const. Law, 343 ; *The Commonwealth* v. *Essex County*, 13 Gray, 253 ; 2 Kent's Comm. 37.

3. Upon these two decisions we might base our whole case : *Aberdeen* v. *Saunderson*, 8 Smed. & M. 663 ; *Female Academy* v. *Aberdeen*, 13 Smed. & M. 645.

SIMRALL, C. J., delivered the opinion of the court.

The city of Aberdeen claims the money received for licenses to retail liquor within the corporate limits, by virtue of its charter, which was granted prior to the adoption of the Constitution of 1869.

On the other hand, the State Board of Education insists that that provision of the charter relied upon, if of the character claimed for it, has been repealed by the eighth article of the Constitution, and chap. 56 of the Code, which regulates the retailing of vinous and spirituous liquors.

The first section of the eighth article of the Constitution affirms that the stability of a republican form of government depends mainly on the intelligence and virtue of the people, and imposes the duty on the Legislature to promote intellectual and moral improvement by "establishing a uniform system of free public schools," etc.

To accomplish that object (in part), the sixth section of the Constitution declares that there shall be established a common-school fund, which shall consist, among other things, of public lands known as swamp lands, fines for breaches of penal laws, * * * "*and all moneys received for licenses granted under the general laws* for the sale of intoxicating liquors, or keeping of dram-shops."

When the Legislature came to put the school system into operation, as delineated in chap. 56 of the Code, it recognized, as a practice which had long prevailed, the granting of such licenses by the incorporated towns and cities. The Code continued that privilege to incorporated towns and cities, but

directed " the sums received for such licenses to be *for the use of the common-school fund, and paid into the State treasury for that purpose.*"

Before the license shall issue, the money therefor must be paid by the applicant to the treasurer of the corporation (sect. 2460), who shall, within thirty days thereafter, pay the same into the State treasury; and for failure, shall be subject, on conviction, to fine and imprisonment.    Sect. 2469.

It would hardly be maintained, at this day, that the power of the State to deal with and regulate internal traffic in ardent spirits was not ample.    It belongs to its police powers.    That subject was carefully considered in *Rohrbacher* v. *City of Jackson*, 51 Miss. 713.    Nor would it now be seriously contended that the Legislature could not modify or repeal privileges and franchises which it had granted to a municipal corporation, at its discretion, provided it did not interfere with rights of property or contract which may have accrued.

It would have been the exercise of unquestionable power if the Legislature had taken away from the towns and cities the franchise to grant these licenses, although the power so to do had been conferred in their respective charters.    If it chose to confer authority to issue the licenses, it could have imposed the conditions, named the sum to be paid, and the use to which the money should be put.    These may have been different from the mode, amount, and use as defined in the acts of incorporation.

These municipal bodies had no vested right, either to grant licenses, or to the money received from them, by virtue of their charters of incorporation, which the Legislature could not resume.    It is quite well settled, in constitutional law, that a municipal charter is not a contract in the sense of the Federal Constitution.    It is a delegation, in part, of the State sovereignty to the local body, for the convenience of local government; which may be withdrawn, in whole or part, at the will of the State.    The charter does not create a contract between the municipality and the State, and it has not such a

proprietary interest in money authorized to be raised by its charter as would prevent a subsequent Legislature from giving another direction to such money. *The People* v. *Power*, 25 Ill. 187 ; *The People* v. *Supervisors*, 50 Cal. 561 ; *The People* v. *Morris*, 13 Wend. 325 ; *Stelz* v. *Indianapolis*, 55 Ind. 515. The rule is subject to the limitation that, under authority conferred by the charter, the municipality may come under such duty or engagements with third persons as to create the sanctity of contract, so that a subsequent Legislature will be restrained in its power so far as that it cannot impair rights which have become perfected. The language of the Constitution is imperative, that there shall be established a common-school fund, to consist, in part, of *all* moneys derived from licenses to retail liquors. The Legislature has devised general laws under which these licenses shall be granted. No other authority shall or can issue them except those of a city, or town, or county, and the money so derived shall be paid into the State treasury for the school-fund. *Yazoo City* v. *The State*, 48 Miss. 440.

It is impossible to execute this law on the theory that it does not apply to those towns and cities to which previous special laws had given the money for municipal purposes. An examination of the charters of these corporations, granted prior to 1869, would show that to nearly every one of them the liquor-license money had been given for some local object. The plan of the Code is, to gather into a common fund all the moneys collected by incorporated towns and cities, and the counties, for these licenses, for common-school purposes.

Turning to the common-school system inaugurated by the same Legislature, we find that this fund, derived from this and the other sources enumerated in the sixth section of the eighth article of the Constitution, is directed to be distributed to the school-districts into which the State has been divided, on an equal and equitable basis ; and for any deficiency to keep up the schools, the districts are invested with the power of local taxation.

The repugnance and inconsistency of the Constitution, and

the legislation we have been considering, with the charters allowing towns and cities to retain the money, are so palpable that both cannot stand. It is impossible that all the moneys received by towns and cities for licenses can find its way into the State treasury as a school-fund, if towns and cities may retain it by virtue of charters granted prior to this legislation.

The repugnant features of the charters must give way to the later statutes. It is plain that the Legislature intended to cover the entire ground by the statute of 1871. The law is " general " and uniform, and is applicable to " *every city or town* " that is incorporated. Any other construction would greatly cripple the constitutional school-fund and impair the efficiency of the common schools, for the fiscal records of the treasury will show that much the larger part of the fund is derived from this source.

But this court has ruled adverse to the defendant in error in several cases. In *The State Board of Education* v. *Holly Springs* (MS.) there was much more plausibility for the pretension set up by the city than in this case. There, the city was authorized to impose an assessment on the license, for municipal purposes. Its authorities had collected $300 for each license, and claimed that sum as paid for city uses. But it was held that it was under a duty to collect $200 and pay it over to the State ; and it was made liable for that sum on each license issued. See also *West Point* v. *State Board of Education*, 50 Miss. 643.

In *The Methodist Episcopal Church* v. *Vicksburg*, 50 Miss. 601, the city was held amenable in tort for brick which its employees had taken and used for municipal purposes.

The contention has been made in other States that the franchise to license is a vested right, not repealed or repealable by general statute. That was the question in *Sloan* v. *The State*, 8 Black, 364, and *The People* v. *Morris*, 13 Wend. 325. In both these cases the repeal of the repugnant provisions of the charters was declared to result from their incompati-

bility with the general statute. The repeal was not express, but by implication. To the proposition put forward by counsel, that the franchise was vested, Nelson, C. J., for the New York court, responded that it was " unsound, and even absurd ; " the charters delegated " political powers," subject to be resumed or modified ; and, applying that principle, held that the franchise had been controlled by the general statute, because of the irreconcilable repugnance.

But it is insisted that the money sued for was collected under a " special " law, and not under a " general " law, and therefore the plaintiffs ought not to recover.

The history of legislation as respects the town of Aberdeen is instructive. At sundry times the Legislature assumed the control of the money derived from licenses. By the charter of 1837, the town was permitted to license, and to retain the money ; the amount of the tax to be fixed by it, but at not less than $25.

The act of 1848 diverted it from the corporate treasury, and gave it to the Aberdeen Female Academy.

By the act of 1850, the money was taken from the academy and devoted to the education of the poor children of the town.

Next comes the charter of 1854, which is a revision and consolidation of all previous legislation on the same subject. Under the rulings of this court in several cases, we are satisfied that the Legislature intended by this act to revise and consolidate in it all previous laws which it designed to be operative, and to repeal all not reënacted. *Railroad Co.* v. *Weimer*, 49 Miss. 739 ; *Swann* v. *Buck*, 40 Miss. 270.

The title imports as much. It professes " to amend and to reduce into *one* the act incorporating the town of Aberdeen, and the several acts amendatory thereto." The body of the act shows that it was intended to supersede all former charters and amendments. It is a full and final expression of the legislative will. That is accomplished by complete and definite enactments, embracing thirty-seven sections. The sixteenth

section, covering five pages of closely printed matter, contains an enumeration of the powers of the mayor and council; among other things, " to license, tax, *regulate*, and *suppress* theatrical and other amusements, shows and exhibitions; all inns, taverns, and boarding-houses, ordinaries, victualing-houses, petty groceries, fruit-shops and stalls, oyster-houses and stalls, porter-houses and cellars, and all places wherein vinous and spirituous liquors are kept for sale in less quantities than one gallon ; and to tax and license the retailing of such quantities' of liquors according to the existing regulations of this State concerning such retailing." Acts 1854, p. 224.

The power here conferred must be exercised in accordance with the then regulations of the State. The charter must be considered as speaking in the present tense. The Legislature consents that it may license, but it must conform to existing regulations. Just as the State changes the regulations to license, the city will abide by them. The regulations then in force, except as modified by special laws applicable to Aberdeen, were prescribed by the act of 1842 (Acts, p. 108 *et seq.*), and are still in force in many respects, having been reënacted by the Codes of 1857 and 1871. This act allowed the receipts for town licenses to go into the corporate treasuries. The charter of 1854 did not, as did that of 1837, give the license-money to the city, as ordinary corporate funds. It is fair to assume that such provision had been omitted from the charter in view of the decisions of *Aberdeen* v. *Saunderson*, 8 Smed. & M. 663, and *Female Academy* v. *Aberdeen*, 13 Smed. & M. 645, which seemed to have held the doctrine that, so long as the town had a gift, by charter, of the money, the Legislature could not direct any other use of it, unless it repealed the franchise to grant the license. Counsel do not pretend that these decisions rest upon any solid reason, but press them upon us as authority, on the rule of *stare decisis*.

If we were compelled to perpetuate the error which they contain, it would be with the utmost reluctance. But they have no application to moneys derived from licenses under the

charter of 1854, because that charter does not give the money to the city.

The defendant in error also contends that, though the money rightfully belongs to the State Board of Education, and was wrongfully paid into the city treasury, it cannot be recovered, because the city is not liable in implied *assumpsit.*

Dillon, in his work on Municipal Corporations, lays down the opposite doctrine, — that is, that the city may be, and is, liable for money paid into its treasury, or property used by it, if in truth the money or property is not its own, but belongs to another.    Sects. 383, 384.

In *Paul* v. *City of Kenosha*, 22 Wis. 266, it was held that a purchaser of city bonds, *void for want of power* in the city to issue them, could recover from the city the sum actually paid.

In *Dill et al.* v. *Inhabitants of Wareham*, 7 Metc. 447, the plaintiff recovered back money which he had paid the town for a license to take oysters in the adjacent waters.    The town had no property in the oysters, and could not, therefore, grant a license to take them.    The court said : " The town must be regarded as holding the money for the plaintiff's use."

In *Armstrong County* v. *Clarion County*, 66 Pa. St. 220, the question was, whether one county could recover from the other one-half the damages the first had been obliged to pay for an injury to a traveller, caused by a defective bridge which both were under a duty to keep in repair, and it was ruled that an *assumpsit* would be implied.

In *Leonard* v. *Canton*, 35 Miss. 189, the plaintiff recovered money which had been exacted from him by the city for a license to retail liquors, when the town authorities had no right, as the law then was, to collect it.    *The State Board of Education* v. *Holly Springs* (MS.) is fully in point.

In order to free the case from embarrassment in the second trial in the Circuit Court, we refer to the decision (this day) made in a case between the same parties, No. 2791, to wit, that if any part of the demand sued for is composed of collections made by the city since the passage of the act of 1875,

it is not recoverable, because such licenses without payment to the sheriff were void.

As we have read the record, the suit was brought by the State Board of Education, and not by the State for its use. The declaration, the style of the case identifying the judgment on the demurrer, and the writ of error agree in that.

We think there is error ; and, rendering the proper judgment in this court, we reverse the judgment, overrule the demurrer, and remand the cause for further proceedings.

CHALMERS, J., specially concurring.

If the city of Aberdeen was enjoying the proceeds of the liquor-license, under its charter of 1837, when the present Constitution was adopted, I do not think that the decision of this case would be affected at all by the constitutional provision. The Constitution devotes to the school-fund " all moneys received for licenses granted under the *general* laws of the State for the sale of intoxicating liquors." A charter is not a *general* law ; and if the city of Aberdeen was receiving, and was entitled to receive, the money by virtue of a provision of its charter, at the date of the adoption of the Constitution, its right to do so was in no manner affected by that instrument.

By the second amendment to the Constitution, adopted at the general election of November, 1875, the word " general " was stricken out before the word " laws." Acts 1876, p· 2. Since that time, the rule would be different; but this suit involves amounts received before its adoption.

If the city enjoyed the proceeds of liquor-licenses under the special provision of its charter, it would not be affected by the general law in the Code of 1871, because the Code in nowise affects special or local laws. Code 1871, sects. 8–10.

But I concur in thinking that the right conferred upon the city by the charter of 1837 was lost by the adoption of the charter of 1854, which contains no grant of the proceeds of liquor-licenses, but confers the right to tax and license saloons for retailing liquors " according to the existing regulations of

this State concerning such retailing.'' Clearly, the proceeds of the licenses must go according to the general existing regulations of the State, and these regulations were changed and repealed by the Constitution of 1869 and the Code of 1871.

By the thirty-third section of the charter of 1854, '' all property, real and personal, and all rights and claims '' theretofore belonging to the town of Aberdeen, are preserved ; but, manifestly, this applied to property rights and claims, moneyed demands, choses in action, and the like, and does not embrace liquor-licenses, which, by the sixteenth section, are to be governed by the existing regulations of this State concerning retailing.

There are no express words of repeal in the charter of 1854, but it is manifestly a very elaborate and completely new and independent charter, intended to constitute a perfect system within itself. Whenever this is the case, the new law operates a repeal of all omitted portions of former laws on the same subject. *Myers* v. *Marshall County*, 55 Miss. 345.

Since the adoption of the charter of 1854, the proceeds of liquor-licenses in Aberdeen have been governed by the general laws of the State, and have belonged, since the adoption of the present Constitution, to the common-school fund.