State ex rel. v. Cummings.

STATE *ex rel.* BELL *v.* CUMMINGS, Judge, *et al.*

(*Knoxville.* September Term, 1914.)

1. COUNTIES. Political status. "County."

A "county" is but an emanation from the State, which does not exercise any power or franchise under any contract between itself and the State, and the State creating it may destroy it. (*Post, pp.* 569, 570.)

Acts cited and construed: Acts 1909, ch. 417; Acts 1913, ch. 272.

Cases cited and distinguished: Demoville v. Davidson County, 87 Tenn., 214; Luehrman v. Taxing District, 70 Tenn., 425; Meriwether v. Garrett, 102 U. S., 511; Redistricting Cases, 111 Tenn., 234.

2. COUNTIES. Local self-government. Diversion of county funds.

Priv. Acts 1913, ch. 272, amending Acts 1909, ch. 417, authorizing a county to issue bonds for building a county road, so as to divert the proceeds to other roads in the county and to direct how the fund should be expended, in the absence of express constitutional restraints is not invalid as depriving the county of local self-government by taking away a delegated power of taxation, since a county, as against the State, can have no vested rights in its delegated governmental powers. (*Post, pp.* 569, 570.)

3. CONSTITUTIONAL LAW. Obligation of contracts. Invasion of private rights. Taxes. Diversion.

Funds acquired and *held* by a county in the exercise of its governmental function of taxation are not entitled to constitutional protection, against legislative diversion, while funds or property held in its *quasi* private or proprietary right are entitled to such protection. (*Post, pp.* 570-572.)

Cases cited and distinguished: Tippecanoe County v. Lucas, 93 U. S., 108; Worcester v. Street R. Co., 196 U. S., 539; Mt. Hope Cemetery v. Boston, 158 Mass., 509.

State ex rel. v. Cummings.

4. HIGHWAYS.    State control.

The control of highways is primarily a State duty, to be taken in immediate charge at will through its own agents.    (*Post, pp.* 572-574.)

Cases cited and distinguished:   Atkins v. Kansas, 191 U. S., 207; Barney v. Keokuk, 94 U. S., 324; O'Connor v. Pittsburg, 18 Pa., 187;  State v. Board of Education, 56 Miss., 518;  State ex rel. v. St. Louis County Court, 34 Mo., 546;  State v. Brewer, 64 Ala., 287;  Lucas v. Tippecanoe County, 44 Ind., 524;  Nashville v. Touns, 37 Tenn., 186;  State v. Haben, 22 Wis., 660.

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. McCONNELL, Judge.

S. H. FORD, for appellants.

COOKE, SWANEY & HOPE and T. S. MYERS, for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

In 1909 the general assembly passed an act authorizing Hamilton county to issue bonds to an amount not exceeding $65,000, for the purpose of building a road across Lookout Mountain, in that county.   Acts 1909, ch. 417.   The bonds were shortly thereafter voted and sold, realizing $65,000.   A commission was appointed to supervise the construction of that road, but for

some reason the fund was allowed to remain in bank almost wholly unused.

The general assembly at its 1913 session passed an act amending the above act of 1909 so as "to provide for the diversion of the fund arising from the sale of said bonds to other roads in said county, and to provide for the manner in which 'said funds shall be expended." Private Acts 1913, ch. 272.

The bill of complaint alleged these facts, in substance, and the further facts that Cummings, county judge and financial agent of the county, and the other defendants, who are the public road commissioners of the county, refused to recognize the act of 1913 as constitutional or in operation, and refused to proceed, after due demand, with the construction of the substituted system of highways. A *mandamus* was prayed for.

The defendants demurred and answered, contesting on several grounds that the amendatory act of 1913 is not constitutional, but the chancellor decreed against them and in favor of complainants. This appeal resulted. Only one phase of defendant's case on appeal will be dealt with in this opinion, the others being disposed of orally and in the decree of this court.

The chief contention of the appellants is that, after the bonds were voted, issued, and sold for a specific purpose, that of constructing a highway over Lookout Mountain, it was not in the power of the legislature to divert the fund, in whole or in part, to the con-

struction of different roads, as was attempted by the act of 1913.

This involves a consideration of the relation sustained by a county as a public corporation to the State. In *Demoville* v. *Davidson County*, 87 Tenn. (3 Pickle), 214, 225, 10 S. W., 353, 356, it was said:

"The county is but an emanation from the State. It does not exercise any power or franchise under any contract between itself and the State. The latter creates, and it may destroy. The State delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes."

In the absence of constitutional restraints, and our constitution contains none, it was declared in *Luehrman* v. *Taxing District*, 2 Lea (70 Tenn.), 425, 438, the maxim of republican government that local affairs should be managed in the local district is subject to such exceptions as the legislative power shall see fit to make.

"The legislature has the power to do whatever is not expressly, or by necessary implication, forbidden by the constitution." Id.; *Meriwether* v. *Garrett*, 102 U. S., 511, 26 L. Ed., 197; *Redistricting Cases*, 111 Tenn., 234, 290, 80 S. W., 750.

It follows that a county as a mere arm of the sovereign power can have, as against the legislative power of the sovereign, no vested rights in the powers conferred upon it for governmental purposes, and that the legislature has plenary power to make provision respecting and to direct the expenditure of the funds

of a county raised and held by it under or based upon the taxing power delegated to it.

In the case of *Tippecanoe County* v. *Lucas,* 93 U. S., 108, 23 L. Ed., 822, it appeared that the legislature of Indiana had by an act (1872) directed the restoration to taxpayers of a county of property that had been exacted from them by taxation, under a previous statute, so long as it remained in the possession of the county. Mr. Justice Field, holding that this exercise of power on the part of the legislature infringed no provision of the federal constitution, said:

"In this court, also, the validity of the act of 1872 is the sole question presented. The act is assailed here, as in the court below, as authorizing an invasion of the right of private property, and as impairing the obligation of an executed contract. Were the transaction one between the State and a private individual, the invalidity of the act would not be a matter of serious doubt. Private property cannot be taken from individuals by the State, except for public purposes, and then only upon compensation, or by way of taxation; and any enactments to that end would be regarded as an illegitimate and unwarranted exercise of legislative power. And any attempt by the legislature to take private property from its grantee and restore it to its grantor would be in conflict with the constitutional inhibition against impairing the obligation of contracts.

"But between the State and municipal corporations, such as cities, counties, and towns, the relation

is different from that between the State and the individual. Municipal corporations are mere instrumentalities of the State, for the convenient administration of government; and their powers may be qualified, enlarged, or withdrawn at the pleasure of the legislatture. Their tenure of property, derived from the State for specific public purposes, or obtained for such purposes through means which the State alone can authorize—that is, taxation—is so far subject to the control of the legislature that the property may be applied to other public uses of the municipality than those originally designated. This follows from the nature of such bodies and the dependent character of their existence. But property, derived by them from other sources, is often held, by the terms of its grant, for special uses, from which it cannot be diverted by the legislature. In such cases, the property is protected by all the guards against legislative interference possessed by individuals and private corporations for their property."

The distinction thus taken by Mr. Justice Field between funds acquired and held by a county in the exercise of the governmental function of taxation and funds or property held in its *quasi* private or proprietary right is maintained in many cases. *Worcester* v. *Worcester Consol. Street R. Co.,* 196 U. S., 539, 25 Sup. Ct., 327, 49 L. Ed., 591; *Mt. Hope Cemetery* v. *Boston,* 158 Mass., 509, 33 N. E., 695, 35 Am. St. Rep., 515; 1 McQuillin, Mun. Corp., sec. 230-2. The first is declared not entitled to "constitutional pro-

tection," while the latter is so safeguarded and may not be diverted by legislative act.

As demonstrating an equivalent power of the legislature of the State, this court held in *Demoville v. Davidson County,* supra, that the legislature could release individuals from liability to a county incurred by way of a privilege tax, assessed by the county under due legislative power, although the demand had been reduced to judgment before the act was passed that provided for the release.

In *Worcester* v. *Worcester Consol. Street R. Co.,* supra, the supreme court of the United States (affirming 182 Mass., 49, 64 N. E., 581) held that the legislature could modify or terminate a contract, made by a municipality with a street railway company, and substitute another and different method of paving the city streets by the company, and this without the consent and notwithstanding the objection of the city.

The *Worcester Case* related to the superior power of the legislature over the city's streets. The control of highways is primarily a State duty, to be taken in immediate charge at will through its own agents. *Atkins* v. *Kansas,* 191 U. S., 207, 24 Sup. Ct., 124, 48 L. Ed., 148; *Barney* v. *Keokuk,* 94 U. S., 324, 24 L. Ed., 224. As was said by Chief Justice Gibson in *O'Connor* v. *Pittsburg,* 18 Pa., 187, 189:

"To the commonwealth here, as to the King in England, belongs the franchise of every highway as a trustee for the public. . . . In England a public road is called the king's highway; and though it is

not usually called the commonwealth's highway here, it is so in contemplation of law, for it exists only by force of the commonwealth's authority."

It is to be observed, therefore, that in the case before us the legislature attempted to deal with a subject-matter within the province, highways, and that its effort to do so was by way of controlling that which had come into existence under its authority, funds produced by bonds to be redeemed by taxes.

In either or both aspects, it was within the competency of the legislature to act, and to divert the funds from one road to another in the county, as to it seemed proper.

Such a governmental arm of the State has not such a proprietary interest in money authorized to be raised as would prevent a subsequent legislature from giving another direction to the expenditure of the fund. *State* v. *Board of Education,* 56 Miss., 518; *State ex rel.* v. *St. Louis County Court,* 34 Mo., 546, 571; *State* v. *Brewer,* 64 Ala., 287; *Lucas* v. *Tippecanoe County,* 44 Ind., 524.

The only limitation on the power of the legislature in that regard imposed by our constitution, it seems, is that the legislature may not direct that the portion of the revenue of a county collected within the limits of a municipal corporation be paid into the treasury of the latter for its sole use and benefit. *Nashville* v. *Towns,* 5 Sneed (37 Tenn.), 186; *Demoville* v. *Davidson County,* supra; and see *State* v. *Haben,* 22 Wis., 660.

But here the effort is not to divert from the county to a city, or even from the roads of Hamilton county to another and different county purpose.

Another phase of the defendant's insistence is that if it be conceded that power existed in the legislature to provide for a change in the roads to be constructed, yet, as a condition of exercise, any change must be made through the local or county authorities, and that a discretion must be left to them, else that there would be a violation of the principle of local self-government.

This aspect of the contention is, we consider, covered by what has been said above in respect of the power of the legislature to immediately intervene and direct the change. The legislature need not act through such local agencies, however wise it may be deemed to be that it should. With the unwisdom of what was done by the legislature, the court as a co-ordinate branch of the State government is not concerned. Its power cannot be denied.

The chancellor upheld the act of 1913 as constitutional. His decree is affirmed, with remand for further proceedings.