CHARLES WHITE, et al. v. JEFFERSON COUNTY, et al.

(*Knoxville.*  September Term, 1928.)

Opinion filed December 8, 1928.

1. STATUTORY CONSTRUCTION.  COUNTY BONDS.

Conditions imposed by one section of a statute, enabling county courts to issue bonds for certain highway purposes, that the authority shall be approved by a vote of the people are not applicable to bonds issued under authority of another section of the same act in which there is no requirement for a favorable popular vote.  (Post, p. 655.)

Citing: Acts of 1919, Chapter 175, secs. 2 and 3.

2. COUNTY BONDS.  ENABLING ACT.  POPULAR VOTE.

Whether bonds issued upon the authority of a favorable vote under the section of the statute authorizing it, the county court may thereafter divert the proceeds to other roads or make other than insubstantial changes in the routing, is not directly decided, but it is said "it would seem that this diversion may result by express authority of the general assembly."  (Post, p. 656.)

Citing: State ex rel. v. Cummings, 130 Tenn. (3 Thomp.), 566.

3. COUNTY BONDS.  ENABLING ACT.  POPULAR VOTE.

Where county bonds are issued under authority of the law, which does not require a popular vote, and there is no requirement that the order or resolution providing for the bonds shall designate or specify the road to which the proceeds are to be applied, no reason exists why such a designation would be binding upon the Quarterly County Court.  This being a legislative act would not prevent subsequent action that does not interfere with contractual relations.  (Post, p. 656.)

4. COUNTY BONDS.  ENABLING ACT.  POPULAR VOTE.

Where the county court is authorized to issue a bond for specified purposes without submission to a popular vote, although the resolution providing for the issuance of the bonds specified cer-

tain roads, there is no reason, in the absence of the existence of contractual rights, of intervening third parties, why the court may not appropriate the proceeds of bonds to any purpose for which they might have issued them in the first instance. There is nothing in the statute to prevent this. (Post, p. 657.)
Citing: Acts of 1919, Chap. 175, sec. 3.

5. STATUTORY CONSTRUCTION. COUNTY BONDS. POPU-LAR VOTE.

The absence of a requirement for a popular election in one section, which is in another section, is significant as indicating the intention of the Legislature to appropriate money and issue bonds without a vote of the people and an intention to indicate that the Legislature did not deem it necessary to tie the hands of the county court and prevent any changes in road building. (Post, p. 657.)

6. STATUTORY CONSTRUCTION. COUNTY BONDS. POPU-LAR VOTE.

The county court is authorized even to make a change in the course or route of the road from that described in the resolution authorizing the issue of bonds, since it is not alleged that the road subsequently described is not one for which the county court would be authorized to issue bonds under the provisions of the law. (Post, p. 658.)
Citing: Sec. 3, Chap. 175, Acts of 1919.

7. PLEADING. IMMATERIAL AVERMENTS. COUNTY BONDS.

An averment that the State Highway Department had proposed to supply or appropriate a specified sum under the provisions of section 3 of the Act is immaterial, in the absence of an averment that the funds will be expended for an unlawful purpose, especially where both the State and County demur to the bill and it appears conclusive from the bill and answer and the records exhibited therewith, that the appropriation of the balance of the bond issue was made for a legal purpose, and there is nothing to indicate it will not be expended and applied. (Post, p. 658.)

8. CHANCERY PRACTICE. INJUNCTION.

Where the merits of a controversy are finally disposed of upon motion to dissolve the injunction the Chancellor should also dis-

miss the suit upon bill and answer. Such a decree will be entered on appeal. (Post, p. 659.)

Citing: Mengle Box Co. v. Lauderdale Co., 144 Tenn. (17 Thomp.), 266.

### FROM JEFFERSON.

Appeal from the Chancery Court of Jefferson County. —Hon. Ben Robertson, Chancellor.

J. Frank Park, for complainant, appellee.

C. T. Rankin, Jas. B. Wright, L. D. Smith, Attorney-General, and Roy H. Beeler, Assistant Attorney-General, for defendant, appellant.

Mr. Justice Swiggart delivered the opinion of the Court.

This is a taxpayers' suit, brought against Jefferson County, its trustee, the State Commissioner of Highways, and others, to enjoin the paying over to the State Department of Highways certain funds of Jefferson County, as the County's part of the cost of construction of a State Highway.

By resolution of the quarterly county court, adopted January 3, 1927, it was resolved that the County agreed "to cooperate with the State Highway Commission in the construction of Road No. 9 from Dandridge to the Sevier County line in a westerly direction approximately from eleven to twenty miles and that the said Court direct the Trustee of Jefferson County to turn over to the State Highway Commission the $90,775.83 now in the custody of said Trustee for the construction of said road."

The fund referred to in this resolution, and which is the subject-matter of this suit, is the balance remaining in the hands of the county trustee from a bond issue of $185,000 authorized by a resolution of the quarterly county court on July 5, 1920. The resolution authorizing the issuance of these bonds directed that the proceeds should be used in the construction of two designated roads, one from the Hamblen County line to the Knox County line, through Jefferson City, which has been constructed and which is not now involved herein, and the other described as "a highway beginning at or near Strawberry Plains *via* Dandridge to the Cocke County line, the most practical route to Newport."

The resolution of July, 1920, did not make the issuance of the bonds to depend upon a popular vote; they were issued by the County under the authority of Acts 1919, chapter 175, section 3, without such vote of the people of the County.

It is averred in the bill that the road to which the balance of the proceeds of the bond issue is applied by the resolution of January 3, 1927, is not the same road as that referred to and described in the resolution of July, 1920; and that having created the fund by resolution directing its application to a designated road, the quarterly county court is without authority and power to apply it to the construction of a different road.

(1) The merits of this contention of the taxpayers depend upon the proper construction and relation to each other of sections 2 and 3 of chapter 175 of the Public Acts of 1919.

Section 2 of this statute authorizes a county bond issue for highway purposes, effective only when the resolution for the issue has been submitted to the qualified voters

of the County for ratification or rejection, with a result favorable to the issue.

It is directed in this section of the statute that before the election is held, the county court, by resolution or order, "shall set forth the roads to be built or improved, naming the starting and ending points, the general course, and approximate number of miles thereof." Authority is given to the county court to direct such changes in the road- or roads so described "as may be deemed by the State Department of Highways to be insubstantial changes."

(2) We do not decide whether, after bonds are issued under this section, upon the authority of a favorable vote at a popular election, the county court may there-after divert the proceeds to other roads, or make other than insubstantial changes in the routing, starting and ending points, and course of the road or roads to which the proceeds are applied; although it would seem that this diversion may result by express authority of the general assembly. *State ex rel.* v. *Cummings,* 130 Tenn., 566.

Section 3 of the Acts of 1919, chapter 175, under which the bonds here involved were issued, authorizes the appropriation of county funds, and the issuance of bonds, without a submission thereof to a popular vote, in order to meet a proposal or agreement of the State Highway Department to supply or appropriate a specified sum of money for the construction or improvement of roads and bridges in the County; the amount to be appropriated or furnished by the County being limited to a sum not in excess of double the amount contributed by the State Highway Department.

(3) There is no requirement in section 3 that the order or resolution providing for the bonds shall desig-

nate or specify the road or roads to which the proceeds are to be applied; but if such resolution does designate certain of the county roads, we can perceive no reason why such designation would be binding upon the quarterly county court. This court is the legislative body of the County, and a legislative body cannot ordinarily forestall or prevent any subsequent action of the same body, except in the creation of contractual relations with persons dealing with the County.

There may be good reason for withholding from the quarterly county court the power to divert the application of the proceeds of a bond issue authorized by a popular vote, when the favorable vote is obtained upon the faith of a resolution, required by statute, designating the use to which such proceeds will be put.

(4) A wholly different situation exists in the case of bonds which the county court causes to be issued under direct legislative authority, without submission to a popular vote. There is no reason apparent to us why the county court may not appropriate the proceeds of bonds so issued to any purpose for which they might have been issued in the first instance, no contractual rights of third parties having intervened. There is nothing in the statute of 1919 to prevent this.

(5) The requirement of section 2 of the statute of 1919 that the resolution calling for an election shall designate the road or roads to be constructed with the proceeds of the bonds, is for the obvious purpose of enabling the voters to know the purpose for which they are authorizing the County to borrow money. The absence of this requirement in section 3 of the statute is significant. Having given the county court the power to appropriate money and issue bonds for road building purposes, with-

out a vote of the people, the Legislature evidently did not deem it necessary or intend to tie the hands of the county court and prevent any changes in a road building policy once adopted.

(6) There is nothing in the bill of the taxpayers to suggest that the road described in the resolution of January, 1927, is not one for which the county court would be authorized to appropriate money or issue bonds under section 3 of the Act of 1919; and we are of the opinion that if the change in the course and route of this road from that described in the resolution of July, 1920, is a material change, the county court was nevertheless acting within its power in appropriating the unused balance of the bonds issued under the resolution of July, 1920, to its construction.

(7) The bill, as amended, further avers that the appropriation of county funds was made without any action of the State Highway Department, proposing or agreeing to supply or appropriate a specified sum of money for the construction of the road.

In the answer filed by the State Commissioner of Highways, it is averred that the State Department of Highways had, on December 21, 1925, submitted to Jefferson County a definite proposal to furnish two-thirds of the cost of construction of the road in question; and a certified copy of this proposal from the records of the county court clerk, is made an exhibit to the answer. While it appears that this offer had once been rejected by the County, it had not been withdrawn, and the resolution of January, 1927, was a substantial acceptance.

There is no averment in the bill that unless the injunction prayed for is issued any portion of the County's money will be expended by the State Highway Depart-

ment for any purpose not authorized by law, nor that the County will be required to pay more than one-third of the cost of constructing the proposed road.

The County, acting through the chairman of the county court, interposed a demurrer to the bill, as did the State Highway Commissioner.

The cause was heard by the Chancellor upon these demurrers, and upon the motion of the State Highway Commissioner to dissolve the injunction and dismiss the suit, upon bill and answer. The Chancellor overruled the demurrers and the motion, and granted an appeal.

In the absence of any averment that the funds of the County are about to be applied to a purpose not authorized by law, we do not think a suit by taxpayers can be maintained, to enjoin the officers of the County and State, merely because of any formal defect in the proposal of the State Highway Department and its acceptance by the County. It appears conclusively from the bill and answer, and the certified records exhibited thereto, that the appropriation of the balance of the bond issue of 1920 was made by the county court for a lawful purpose, and there is nothing to indicate that it will not be so expended and applied.

(8) It is our conclusion, therefore, that the Chancellor should have sustained the motion to dissolve the injunction and dismiss the suit upon bill and answer, and a decree so disposing of the cause will be entered here. *Mengle Box Co.* v. *Lauderdale Co.*, 144 Tenn., 266.

The costs will be paid by the complainants.

ON PETITION TO REHEAR.

Our decree dismissing complainants' bill was not based upon a holding that the cause on its merits had been submitted to the Chancellor on bill and answer. The cause

was before the Chancellor upon a motion to dissolve the temporary injunction, and this motion was heard on bill and answer.

If the Chancellor had dissolved the injunction, it would have been his duty to dismiss the bill and grant complainants an appeal, under the rule stated in *Mengle Box Co.* v. *Lauderdale Co.*, 144 Tenn., 267. On appeal by the defendants from the decree refusing to dissolve the injunction, it appeared to us that the record evidence stated in the answer was conclusive and that the Chancellor should have dissolved the injunction and dismissed the bill. Therefore, upon the authority of the case cited, it seemed proper to us to enter the decree the Chancellor should have entered.

In a controversy between the County and the State, as contracting parties, much of the argument of learned counsel for complainants would have force. But in this litigation both the contracting parties are in agreement. The State, through the Department of Highways, is making no point that its offer of aid to Jefferson County could not have been accepted in January, 1927, so as to bind the State, because it had previously been rejected, and there is no averment of the bill that the County will not receive the full measure of State aid required by law, as consideration for its contribution of the disputed funds to the construction of the proposed road. To sustain complainants' bill, it seems to us, would be an unwarranted interference by the courts of the business of the County and State agencies, on account of mere irregularities. The purpose of the statute is to secure the building of state highways with a definite division of the cost between the State and County, and the interference of a court of equity, through its injunctive process, is not

justifiable, at the suit of taxpayers, when the legal representatives of both governmental agencies are asserting without contradiction that the required division of cost is complied with.

These considerations impelled us to the conclusion, stated in our opinion previously filed, that the appropriation by the County in 1927, herein sought to be enjoined, was a substantial acceptance of the offer made by the State Highway Department in 1925. But we are not convinced of the merits of the bill, even if the proposal of the Highway Department had come for the first time after the appropriation had been ordered by the county court. It is clear that taxpayers may maintain a suit in equity to enjoin an expenditure of public money for an illegal purpose, but it is not at all clear that such a suit may be maintained to restrain an expenditure of public money for a purpose authorized by law, because of some irregularity in the mode, order or time of the appropriation.

We do not feel that we can add to what we have already said as to the proper construction of the statute. Acts 1919, chapter 175, sections 2 and 3. Under section 3, the quarterly county court, in January, 1927, could have directed that the balance of the proceeds of the bonds already issued be held for their redemption, and that a new issue of bonds be made for the construction of the road as now proposed. We adhere to our conclusion that such course was unnecessary, and that the county court acted within its power in changing the application of the existing fund from the road as originally proposed to the road now approved by the Department of Highways.

The petition to rehear will be denied.