ELLIOTT NATIONAL BANK *v.* WESTERN AND ATLANTIC RAILROAD.

1. CONTRACTS. *Validity tested by laws of State where executed.* Contracts in the form of negotiable promissory notes executed in the State of Georgia, must be tested as to their validity by the law of Georgia, and the decision of the highest court of that State on exactly similar contracts, will ordinarily be followed by the courts of this State.

2. PUBLIC AGENTS. *Powers.* *Limited by Statute.* The powers of public agents being defined by statute, which is notice to all the world, are limited, and no pretension of authority or customary action can amplify that authority beyond the statutory limitation.

3. SAME. *Case.* The superintendent of a certain railroad, the property of the State of Georgia, was authorized by statute to make contracts necessary for the general working and business of the road not exceeding a prescribed sum, " and over that amount subject to the approval of the Governor in writing." Held, that notes executed by the superintendent, each calling for an amount over that prescribed, without the approval of the Governor in writing, were void, even in the hands of an innocent purchaser for value in due course of trade, and although similar notes had been executed and paid by the superintendent.

---

FROM HAMILTON.

---

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

TOMLINSON FORT and R. J. MORGAN for complainant.

VAN DYKE, COOKE & VAN DYKE and N. J. HAMMOND for defendants.

COOPER, J., delivered the opinion of the court.

By an act of the Legislature of Georgia, passed December 21, 1836, "A railroad communication as a State work and with the funds of the State," was directed to be made, which was eventually known as the Western and Atlantic Railroad, and extended from Atlanta to the Tennessee State line near Chattanooga. On the 24th of January, 1838, by an act of the General Assembly of the State of Tennessee, the State of Georgia was allowed the right of way for the extension and construction of her said railroad from the State line to the Tennessee river, with the privileges, rights and immunities and subject to the restrictions as prescribed for the benefit, government and direction of the Hiwassee Railroad Company. The road was completed and run by the State, its executive officers, as fixed by the Georgia act of 1851-2, being a superintendent, treasurer and auditor, whose duties are prescribed in detail, Code of Georgia, secs. 968 to 986, embodying the provisions of the act. By sec. 971, par. 4, "The superintendent has authority to contract for, and purchase machinery, cars, materials, workshops, and all other contracts necessary for the general working and business of said road, not exceeding three thousand dollars,—and over that amount subject to the approval of the Governor in writing." Other provisions of the act contemplate the auditing of all claims against the road, after which, if approved by the auditor, the superintendent is to draw his warrant for the amount on the treasurer, who is to pay the same.

On December 27th, 1870, the State of Georgia leased the road to the Western and Atlantic Railroad Company for a term of twenty years; and that company, being chartered by the Legislature of Georgia, has been in possession of and running the road ever since. On the 21st of June, 1876, this bill was filed in the Chancery Court at Chattanooga by the complainants as creditors of the Western and Atlantic Railroad, against that road and the Western and Atlantic Railroad Company—"both of Georgia," says the bill. It is based upon the Code of Tennessee, sec. 3431 and sec. 4294, which authorize a creditor's bill against a corporation when it has ceased to use ts franchises or granted them to others in whole or in part.

The Elliott National Bank founds its claim as a creditor on the following note:

Western and Atlantic Railroad,
Office Superintendent,
Atlanta, Ga., July 8, 1870.

Nine months after date the Western and Atlantic Railroad promises to pay E. N. Kimball, manager, or order, twelve thousand and seventy-seven 40-100 dollars, for value received. Payable at office of Henry Clews & Co., 32 Wall St., New York.

The Western and Atlantic Railroad,
By Foster Blodgett, Supt.

The complainant, Demeret, is the holder of a precisely similar note, except that it is dated July 25th, 1870, is payable four months after date and is for $8,060. Both of the complainants claim that these notes were sold and endorsed to them respectively be-

fore maturity and in due course of trade for value, and without notice of equities or defects.

The State of Georgia was permitted to intervene in the suit as a party defendant, on the ground of being the owner of the Western and Atlantic Railroad, subject to the lease to the Western and Atlantic Railroad Company, its depots, track, etc., which were attached under the bill and sought to be subjected to the satisfaction of the debts of complainants. Upon the final hearing, the Chancellor dismissed the bill and the complainants appealed.

The case is of grave importance to the litigants and has been argued with marked ability on both sides. Omitting technical points and collateral issues, and conceding that the complainants are _bona fide_ holders for value of the notes traded as negotiable securities, the case turns upon the powers of Foster Blodgett, as superintendent, to execute the paper so as to make it binding on the road or the State of Georgia.

Both notes were executed in Georgia, and their validity must depend on the law of that State. The parties agreed of record in the court below that the statutes of Georgia and the decisions of the Supreme Court of the State might be read from the printed laws and reports. It seems, however, under the Code, sec. 3801, the court will take judicial notice of the laws of our sister States and the decisions of their courts. _Hobbs_ v. _Memphis Railroad Co._, 9 Heis., 873; _Anderson_ v. _May_, 10 Heis., 88. The character of the Western and Atlantic Railroad in the State of Georgia and the authority of its superintendent to execute ne-

gotiable paper, must turn upon the construction of the Georgia statutes. In the absence of any construction put upon them by the highest court of the State, our duty would be to construe them as best we could. But if the highest court of the State has already construed them, our duty is ordinarily to conform our decision to the construction given. There are exceptions to this rule of comity, but this case falls within none of them. *Lewis* v. *Woodfolk,* 2 Bax., 26; *White* v. *Hart,* 13 Wall., 647. It has been held by the Supreme Court of Georgia, that the Western and Atlantic Railroad is not a corporation, and that the superintendent of the road belongs to the class of public agents like the Governor of the State. *Dobbins* v. *Orange, etc., R. R. Co.,* 37 Ga., 240. The difference in the relations of public and private agents to their principals is well defined. A private agent will bind his principal within the apparent scope of his authority, although he violate instructions. *New York, etc., R. R. Co.* v. *Schuyler,* 34 N. Y., 30; *Merchant's Bank* v. *State Bank,* 10 Wall., 604. But with public agents it is entirely different. Their powers and duties are defined by statute, which is notice to the world of the limitations of their authority, and no pretension of authority or customary action can amplify that authority beyond the statutory limitation. *The Floyd Acceptances,* 7 Wall., 666; *Pierce* v. *United States,* 1 N. H., 270. With this distinction in view, even if the courts of Georgia had never passed upon the question, we should be compelled to hold that the notes sued on are void for want of authority in the

superintendent to execute them. But the very question has been presented to the Supreme Court of Georgia, in *Tappan* v. *Western and Atlantic Railroad* and others, and decided at the August Term, 1878, of that court. That was a suit brought by Tappan on two notes identical in form with those sued on in this case, bearing respectively the same dates, one for $12,006.57, and the other for $6,000. The Western and Atlantic Railroad filed a demurrer, assigning among other causes, that "Foster Blodgett had no authority, as superintendent or otherwise, to bind said defendant by giving said promissory notes." The demurrer was sustained by the court below and the judgment on appeal was affirmed. "At the time the notes were made," says the Supreme Court, through Warner, C. J., "the Western and Atlantic Railroad was the property of the State and had not been incorporated. By the public law of the State defining the powers of the superintendent of its railroad, he did not have the power to make contracts for the purchase of machinery, cars, material, workshops, or other contracts necessary for the general working and business of the road, for any amount exceeding three thousand dollars. All contracts over that amount made by the superintendent of the road, in order to be valid and binding upon the State or its road, were required to have the approval of the Governor of the State in writing. Code, sec. 971. The contracts sued on being for more than $3,000, the superintendent had no power to make them, without the approval of the Governor in writing, and there is no pretense that such approval of the Gov-

ernor was ever had to the contracts set out in the declaration."

It is argued, however, by the learned counsel for complainants, that there is a pretense of such approval in this case. But in this he is clearly mistaken. The bill upon which his clients' rights rest contains no such averment. The evidence upon which he relies to make out a pretense, shows that Foster Blodgett, as superintendent, in the name of his company, did enter into a contract with the Tennessee Car Company, by E. N. Kimball, manager, on the 5th April, 1870, for fifty box cars, at $850 per car, to be delivered within ninety days, which was approved by the Governor. But there is nothing to connect the notes in controversy with the contract, even if the approval of the contract dispensed with the Governor's approval in writing of the new contract evidenced by the notes. On the contrary, the evidence is clear, and admitted in the face of the bill, to the extent of the issuance of "several notes of the same general and special character," that, in the month of June, after the contract of the 5th of April, Foster Blodgett, as superintendent, executed several notes to the Tennessee Car Company, for various amounts, aggregating $40,562.70. The inference, in the absence of anything to the contrary, is fairly that these were the notes executed in satisfaction of the contract with the Tennessee Car Company, and the approval of the Governor of that contract does not benefit the complainants. The doctrine of estoppel by "customary action," does not, as we have seen, apply to acts of public agents. Nor does

the letter purporting to be written by H. C. Corson, "Secty of Ex. Dept.," of the 17th of June, 1870, although under the great seal of Georgia, help the complainants.   For that is not the "writing" of the Governor, nor the approval of a specific contract, which the statute clearly requires.   Moreover, when carefully read, it will be seen that all that the writer purports to say by instruction of the Governor is, "that the Western and Atlantic Railroad is the property of the State."   The residue of the letter seems to be the writer's individual opinion of the powers of the superintendent.   But it would make no difference in this case if the Governor participated in the erroneous opinion. The very object of the rule in relation to public agents is to protect the public interests against loss from the "fraud, mistake, rashness, or indiscretion of public agents." *State of Missouri* v. *Bank of Missouri*, 45 Mo., 529.

There is no error in the decree of the Chancellor, and it must be affirmed with costs.