BOARD OF EDUCATION OF THE MEMPHIS CITY SCHOOLS *v.*
SHELBY COUNTY.*

(*Nashville.* December Term, 1926.)

Opinion filed, March 12, 1927.

1. PUBLIC SCHOOL SYSTEM. A state purpose.

The language of the Constitution of Tennessee by Article XI, section 11, also found in Constitution of 1834, has been construed by this court to manifest the interest of the people, that the education of the children through a system of common schools should be a state purpose. (Post, p. 218.)

Citing: Ballentine v. Pulaski, 83 Tenn., 633; 642; Leeper v. State, 103 Tenn., 500-521-522-530.

2. PUBLIC SCHOOL FUNDS. A perpetual trust.

The public or common school funds of the State in the hands of the trustee of counties are not the property of the counties, and their authorized agents have no control over same. (Post, p. 216-218.)

Citing: Code 1858, sec. 1167; Shannon's Code, sec. 1365.
Citing: State v. True, 116 Tenn., 294-309.

3. SAME. Same. Recovery of funds misappropriated.

When in restitution of funds, misappropriated by a county trustee, a conveyance of realty is made "for the use of the district school directors of said county" a trust is thereby created, and such property is to be considered as if it had been purchased by the county with school funds. (Post, p. 217.)

4. MEMPHIS CITY SCHOOLS. Annexed territory. Construction, Acts 1899, chapter 122.

The Acts of 1899, chapter 122, transferred to the Board of Education of the Memphis City Schools, a public corporation created by Acts 1868-9, chapter 30, "all of the public schools and public school buildings, lands, leases, lots and other school property of every description, situated within the territory annexed to the city of Memphis by chapter 221 of the Acts of the same year, and in-

cluded land taken in satisfaction of misappropriation by county trustees of school funds, prior to such annexation. (Post, p. 218.)

Citing: Edmonson v. Board of Education, 108 Tenn., 551-561.

5. **STATE SOVEREIGNTY. Governmental agencies.**

A governmental agency is the mere arm of the sovereign power, without vested right in power conferred, and is under legislative control as relates to property, not acquired, in proprietary right. (Post, p. 219.)

Citing: Demoville v. Davidson County, 87 Tenn., 214-225; State ex rel. v. Cummings, 130 Tenn., 566.

6. **SAME. Same. Conflicting claims, between.**

When property is not held by a governmental agency in its quasi-nature or proprietary right, such an agency cannot assert a defense of adverse possession, laches, or the statute of limitations against another such agency. In the execution of a state purpose, there can be no interest adverse. (Post, p. 220.)

Citing: State ex rel. v. Cummings, 130 Tenn., 566.

---

*Headnotes 1. Adverse Possession, 2 C. J., section 484 (Anno); Limitation of Actions, 37 C. J., section (Anno); Schools and School Districts, 35 Cyc., page 1055; 2. Schools and School Districts, 35 Cyc., p. 920.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.— HON. D. W. DEHAVEN, Chancellor.

SIVLEY, EVANS & McGADDEN, for Board of Education.

L. D. BEJACH, for Shelby county.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

The appeal in this cause is by Shelby County from a decree overruling its demurrer and sustaining the contentions advanced by the original bill of the Board of Education of the Memphis City Schools.

The bill asserts title in the Board of Education of the Memphis City Schools to two lots of real estate in the possession of Shelby County, and seeks a decree declaring its right and title therein and a writ of possession, all of which were awarded by the Chancellor.

The bill avers that in 1874 the county trustee, having in custody for safe-keeping the Shelby County School Fund, described as "money raised by taxation for the conduct, maintenance and operation of said public schools by said district school directors," and having executed an official bond for the safe keeping thereof, with one S. Folwell as one of the sureties thereon, defaulted as to certain of said school funds, whereupon the District School Directors of Shelby County recovered a judgment against the said trustee and the sureties on his bond in the sum of $10,000; that the district school directors, constituting the governing body for the public schools of the county, permitted the said Folwell to satisfy the judgment against him by a conveyance of four lots, being lots Nos. 16, 17, 29 and 30 of the J. A. Carnes Sub-Division. The deed conveyed the said lots to "the County of Shelby for the use of the district school directors of the said county."

The bill avers that in 1886 two of the four lots; to-wit Nos. 16 and 17, were conveyed by Shelby County to the school directors of the fifth school district of the county, and their successors in office; and upon these two lots a public school has since been maintained, first as a county school and then as one of the schools main-

tained by the Board of Education of the Memphis City Schools.

The bill further avers that in 1889 the boundaries of the city of Memphis were extended so as to include the lots in question, and by chapter 122 of the Acts of the General Assembly for 1889, ''all of the public schools and public school buildings, lands, leases, lots and other school property of every character, situated within the territory annexed to the city of Memphis,'' were granted and transferred to the Board of Education of the Memphis City Schools, to be held and used for educational purposes.

The bill further avers that the lots now involved, Nos. 29 and 30, have been retained in the possession of Shelby County, and have been used by the county for its stables, in which the mules and horses belonging to the county are kept.

The bill also avers that the county, in 1910, erected a building on the two lots which it used as a county morgue; and it is averred that such use by the county has been continuous, open and notorious, and generally known in the county.

The bill further avers that the complainant now desires to extend and enlarge the school buildings on lots 16 and 17 so as to use lots 29 and 30 in connection with said public school and for additional buildings; that complainant has notified the county that it desires to use said lots for such school purposes, and has demanded possession of same from the county, but that the county has denied complainant's right to the use and possession of said lots, and has denied that complainant has any right, title or interest in and to said lots.

The bill concludes with the averment that the County of Shelby is wrongfully asserting title to said lots 29

and 30, and is wrongfully withholding from complainant the use and possession thereof.

By its demurrer the county contends that the district school directors conceded the title of the county to the property in question by their request for and acceptance of a deed to lots 16 and 17 in 1886, and that this division of the property included in Folwell's deed was, in effect, a compromise settlement of the title as between the school directors and the county.

By its demurrer the county further contends that it has perfected title to lots 29 and 30 by adverse possession, and by its open and notorious use; that complainant's cause of action is barred by the statute of limitations, and that the averments of the bill show complainant to have been guilty of such laches, gross negligence and unreasonable delay that it has lost any right of action it may otherwise have had.

Complainant has urged in this court that title to the lots in question was vested in Shelby County in trust, the trust having been expressly created by the language of the deed from Folwell that the property was conveyed to the county "for the use of the district school directors of the said county;" and it is urged that the several defenses advanced by the county to this suit are not defenses which such a trustee can successfully assert with regard to the trust property.

The parties to the suit are governmental agencies, and the property was originally conveyed to the county to be used in aid of a governmental function; and we have found it difficult to determine the rights of the parties by the application of principles which would apply if the parties were individuals contending for rights in private property.

The funds misappropriated by the county trustee, as described in the bill, were not the property of Shelby County. Of such funds this court, in *State* v. *True,* 116 Tenn., 294, 309, said:

"The public school funds in the hands of the trustees of counties are not the property of the counties and their authorized agents have no control over them. The school fund does not go into the county treasury; it cannot be appropriated by the county authorities to any purpose, and it is not subject to the warrant of the chairman of the county court. The trustee is required to keep it, from whatever source it may be derived, separate and apart from all other county funds in his hands, and it is made a high misdemeanor for him to use or appropriate it to other or county purposes. Code, Section 1167; Shannon's Ed., Section 1395. He cannot dispose and distribute it for other purposes than the maintenance of the public schools of the county, and only for this purpose in the manner pointed out by special statutes."

The bill discloses that the property in question was accepted in part satisfaction of a judgment awarded the school directors of the county for school funds misappropriated. The property is, therefore, to be treated as if it had been purchased by the county with school funds; and that being true, the county was not authorized by law to make any use or disposition of the property so acquired except for school purposes.

The Act of 1899, Chapter 122, transferred to the complainant, as the Board of Education of the Memphis City Schools, "all of the public schools and public school buildings, lands, leases, lots and other school property of every character," situated within the territory annexed to the city of Memphis by chapter 221 of the acts of the

same year, which annexed territory included the lots in question.

It is contended by the county that this statute applied only to lots on which a school building was then located, and did not include property which was not then being used for school purposes.

We cannot assent to this contention. The act enumerated public schools, public school buildings, lands, leases and lots, and then referred to "other school property of every character" as included in the transfer. The property in question was localized, with the assent of the school directors of the county, and was situated within the annexed territory. It was school property, and there was no legal authority in the county, or in the district school directors, to apply it to any other purpose. Its transfer to the Board of Education of the city schools was clearly within the intent and scope of the act, and the all-inclusive language of the act is sufficiently broad to include school property whether in actual use or not.

The language of the Constitution, Article 11, Section 12, which is also to be found in the Constitution of 1834, has been construed by this court to manifest "the intent of the people that the education of the children through a system of common schools should be a state purpose." *Ballentine* v. *Pulaski,* 83 Tenn., 633, 642.

By Chapter 25 of the Acts of 1873 the General Assembly provided for the establishment and maintenance in this State "of a uniform system of public schools."

Of the system so inaugurated this court, in *Leeper* v. *State,* 103 Tenn., 500, 530, said:

"Since the inauguration of the present system of public schools in 1873 it has never been even suggested that the State and counties may have different systems and schools, the State operating a State school and the

county a county school, but the basic idea is that the county may supplement the State funds so as to enlarge and improve the State schools.''

And in the same case (103 Tenn., 521-522,), the court said:

''It is said the schools do not belong to the State, but to the people, and while in a certain sense this is true, it is at last but a play upon words. The system is inaugurated, operated, shaped, supported, and controlled by the State through its legislature, but for the benefit of the people, and as in all other matters of public concern, the people act through their immediate representatives, the Legislature.''

The complainant, Board of Education of the Memphis City Schools, is a public corporation, created by Chapter 30 of the Acts of 1868-69. The method of selecting members of the board was somewhat changed by chapter 17 of the Acts of 1883. The nature of this corporation, and the purposes for which it was created, are stated by this court in *Edmondson* v. *Board of Education,* 108 Tenn., 557, 561, as follows:

''It is evident this corporation was created for the convenience of the citizens of Memphis, upon the theory that the common schools of the city would be more judiciously managed by a local agency, selected by and responsible to these citizens, than in any other way. It is well settled that such a corporation is under the control of the legislature, so that it may be abolished or its power may be enlarged or its responsibilities increased at any time by that body, without the danger of encountering constitutional difficulties.''

In *Demoville* v. *Davidson County,* 87 Tenn., 214, 225, quoted in *State ex rel.* v. *Cummings,* 130 Tenn., 566, 569, this court said:

"The county is but an emanation from the State. It does not exercise any power or franchise under any contract between itself and the State. The latter creates, and it may destroy. The State delegates the power of taxation, but it may withdraw such power, and itself assess taxes for municipal purposes."

In *State ex rel.* v. *Cummings,* 130 Tenn., 566, the court had under consideration the validity of an act of the General Assembly directing the expenditure of certain funds of the county on designated roads within the county, which funds were the proceeds of bonds previously issued and sold by the county for the purpose of building a road other than those designated in the legislative act. In upholding the power of the General Assembly to so divert the county funds from the original purpose, this court said:

"It follows that a county as a mere arm of the sovereign power can have, as against the legislative power of the sovereign, no vested rights in the powers conferred upon it for governmental purposes, and that the legislature has plenary power to make provision respecting and to direct the expenditure of the funds of a county raised and held by it under or based upon the taxing power delegated to it."

Bearing in mind the foregoing authorities, the effect of the Act of 1899 was that the State transferred from one of its governmental agencies to another certain property held by the first agency in its governmental capacity for a governmental purpose. The property in question was not held by the county in its *quasi*-private or proprietary right. The Board of Education, to which the property was transferred, had no immediate need for the property for the designated purpose, and by its failure to take possession or assume control of the

property permitted the county to retain possession and use the property for an unauthorized purpose. When the need arose for using the property for school purposes, the Board of Education asserted the right vested in it by the Act of 1899, and demanded possession of the property for school purposes, which demand was refused.

We do not think the defenses of adverse possession, laches, or the statute of limitations can be asserted in such a case by one governmental agency against another. In the execution of a state purpose neither the Board of Education nor the county has any interest adverse to the other, and the use to which the property has been put by the county while in its possession must be conclusively presumed to have been in recognition of the right of the State, through the Board of Education, as its agency, to claim and use the property for school purposes whenever it should be needed. There is nothing in the bill, to which the demurrer was filed, to indicate the contrary; nor should the county be permitted to assert the contrary with regard to property not acquired in its proprietary right. *State ex rel.* v. *Cummings,* 130 Tenn., 566.

It results that the decree of the Chancellor sustaining the bill will be affirmed, and costs adjudged against the County of Shelby.