GARNER *et al. v.* SCALES, *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed May 4, 1946.

Earl Beasley, of Franklin, and David M. Keeble and Walker & Hooker, all of Nashville, for complainants.

Tyler Berry, Jr., and T. P. Henderson, both of Franklin, for defendants.

Mr. Justice Neil delivered the opinion of the Court.

The complainants, who are citizens and residents of Williamson County and also members of the Board of Education of Franklin Special School District, filed their original bill in the chancery court for and on behalf of said board of education and on behalf of the citizens, taxpayers, and scholastic population of said special school district. The bill seeks to have restored to the board of education of said special school district the sum of $47,406.02, which it is claimed was unlawfully diverted as a result of erroneous calculations and apportionments of school funds due said board the calculations being made by F. J. Page, the county superintendent of schools.

The defendants are W. P. Scales, County Superintendent of Education of Williamson County, and B. B. Roberts, trustee of said county. By amendment Williamson County was later made a party defendant by permission of the chancellor.

The Franklin Special School District was created by Chapter 710 of the Private Acts of 1925. The boundaries of the district are coextensive with the Ninth Civil District of Williamson County, in which the town of Franklin

is located. For the purpose of maintaining and supporting the schools located within this school district, the act authorized the levy and collection of a special school tax of 15 cents on each $100 of property, which fund, together with all other school funds due and payable to said district, was to be under the control and direction of the special board of education. This 15 cent tax was later reduced to 10 cents on the hundred dollars of taxable property. By Section 6 of the Act it was provided that the county trustee should apportion to such school district the *pro rata* share of all school funds in his hands to which the Fanklin Special School District was entitled which apportionment as between said district and the remainder of Williamson County shall be made each year in proportion to the average daily attendance in the schools in said special school district. The apportionment so made by the trustee should apply to any and all school taxes assessed and collected locally by Williamson County under the general law, and also to the *pro rata* share of all moneys paid to said county trustee by the State.

By Section 7 of the act it was provided that, after the apportionment was made as aforesaid, he should pay the amount due the special school district to the treasurer of the school board of the district. The act made it the duty of the board of education of said special school district to furnish the trustee the necessary statistical data, and which was by the trustee made the basis of the apportionment of school funds.

Under section VI of Complainants' bill the following allegations appear.

"That prior to the year 1941 one F. J. Page had held and occupied the position or office of County Superintendent of Williamson County, serving in the capacity

for many years before 1925 and continuously from 1925 until 1941, during which latter year he was replaced by the defendant W. P. Scales. That from and after 1925, when said Act became effective, and, upon said Board annually furnishing the statistical data required by said Act in order to determine the funds which it was annually entitled to receive, the said F. J. Page would ostensibly calculate the sum of money that said Board was entitled to, supposedly upon a correct apportionment of said school funds as directed by the Act and, upon his calculation and representation, he would issue each year warrants from time to time to the Treasurer of said Board for the sums appearing to be due it and each warrant was honored by the Trustee, who accepted the calculations, representations and figures of the said F. J. Page, believing them to be accurate, as did the members of said Board. However, as will be fully shown hereinafter, the said calculations, apportionments, representations and figures of the said F. J. Page were inaccurate for each year from 1925 until the discrepancies were discovered and learned when defendant W. P. Scales went into office in the year 1941; and except for two of said years, to-wit, the fiscal year ending June 30, 1934, and June 30, 1935, when said Board received over-payments, there was a substantial under-payment of which the Trustee and the Members of said Board were unaware at the time. Complainants would show that they are entitled to recover a large and substantial sum of money from defendant Trustee on account of the annual underpayments which will be itemized and explained fully hereinafter, and to this end they bring this bill, alleging that they, as a Board of Education, are a governmental agency and that they, as Members of said Board of Education, have the right to sue for and on behalf of themselves as such Board and

further for and on behalf of the citizens, taxpayers and scholastic population of said School District, and to recover all school funds to which said Board is entitled.''

Section VII of the bill alleges that when the complainant board learned in 1941 ''of the shortages in the payments annually made to it, it caused an examination to be made of the data and reports furnished by the County Superintendent to the State Department of Education in an effort to ascertain the amount which it is now entitled to receive, have, and recover of and from defendant Trustee, and from this examination'' they set out the amount of school funds which the board received, from the county trustee each fiscal year beginning with the fiscal year ending June 30, 1926, and including the fiscal year ending June 30, 1940, and the amounts which they claim they should have received during each fiscal year.

The complainants expressly refrained from making any accusation of official misconduct on the part of B. B. Roberts trustee. It is said that he simply honored each year the warrants issued by the said F. J. Page, who calculated the amount which he thought the board was entitled to receive, based upon the average daily attendance in the elementary schools of said school district. Complainants seek no personal judgment against the trustee, but claim that he holds the money alleged to be due ''in trust for said board and for the citizens, taxpayers, and scholastic population of said school district.''

By amendment to the bill Williamson County was made a defendant and complainants alleged that they are entitled to have any judgment which they recover in this cause rendered against said county, and in the event the defendant trustee does not have sufficient school funds in his hands out of which said judgment may be satisfied, that Williamson County may·be required to pay said

judgment under proper orders and decrees of the Court. The bill was further amended by order of the Court, as follows: "XI. It is further averred that W. O. Duggan, Commissioner of Education of the State of Tennessee, has declined to become a party complainant to this action, and has not brought or attempted to bring any action against the County of Williamson and/or the other defendants named in said original bill of complaint, in an effort to compel the defendants to pay over and restore to the Franklin Special School District the portion of the school funds to which the said Special School District is entitled to pursuant to Chapter 710 of the Private Acts of 1925, all as set forth in said original bill of complaint; although the said W. O. Duggan, Commissioner of Education of the State of Tennessee, has been advised of the facts as alleged in said original bill."

The bill further alleges that complainants have employed counsel to prosecute this suit and that they are entitled to be paid for their services out of the school fund sought to be recovered. The prayer of the bill is not only for a decree against the defendants, but that the Court also decree a reasonable fee to counsel.

The defendants, B. B. Roberts, trustee, and W. P. Scales, County Superintendent of Schools, filed separate demurrers to the bill upon the ground that no judgment is sought against them and that they are not necessary parties to the cause. It is not necessary that we give consideration to these demurrers in the view we have taken of questions raised in the demurrer filed by counsel for Williamson County, which are as follows:

"1. The Complainants, the Board of Education of the Franklin Special School District, are not the proper parties, and have no legal right to bring this suit, which is a suit to recover school funds alleged to have been improp-

erly apportioned by the County Trustee among the schools of the County; the power to protect such school funds, to see that they are not improperly apportioned or misappropriated or illegally or improperly disposed of, and the power to bring such suit being, by Section 2314, subsection 16, of the Code of Tennessee, vested alone in the Commissioner of Education of the State of Tennessee.

"2. Because the bill shows that for the year 1925, the year the Special School District was created, to the year 1940, inclusive, the complainants, or their Predecessors in office, in order to determine the amount of school funds which the Special School District was entitled to receive annually, caused or permitted F. J. Page to calculate the amount thereof, and caused or permitted F. J. Page to issue warwants on the County Trustee for the amount which he had found to be due; said warrants being honored by the County Trustee 'who accepted the calculations, representations and figures of the said F. J. Page believing them to be correct, as did the members of said Board.' Under these allegations, in the absence of any charge of fraud, corruption or collusion, the complainants are now estopped to challenge the apportionments which were made and paid to them during these years."

Other grounds of the demurrer are largely a repetition of the averments in Ground No. 2.

The chancellor sustained the first ground of defendant's demurrer and overruled the second. Both complainants and defendants were granted an appeal to this Court and assigned errors based upon the contention that the chancellor was in error in sustaining the first ground of the demurrer and overruling the second.

We think the chancellor was correct in holding that the members of the board of education of this school

district could not maintain a suit of this kind; that the duty devolves upon the State Commissioner of Education, by and with the consent of the Governor, to take all necessary steps to protect the school funds of the state, or any part thereof, from being illegally apportioned, or which may be negligently or mistakenly allocated by subordinate officials. For us to hold otherwise would result in utter confusion in administering the general law applicable to the elementary schools of the state.

The private act which created the Franklin Special School District was passed by the same Legislature that passed the General Public School Law of 1925, Code, Section 2306 *et seq.* In said act it was expressly declared that the policy of the board of education of the district "shall be in harmony with the general system of public schools of the State." Now the General School Law is administered by the State Commissioner of Education as the chief executive officer. Among his duties there is noted the following, Code, Section 2314, subsection (16):

"Whenever it shall appear to the commissioner of education from the report of any school official or from any other reliable source that any portion of the school fund has been lost, misappropriated, or in any way illegally disposed of, or not collected, or is in danger of loss, misappropriation, illegal disposition or failure of collection, it shall be the duty of the commissioner to call upon the district attorney or county judge or chairman of the county court, or the county attorney, to protect, recover, or force collection of such funds, provided the governor shall first give his approval to such action.

"The commissioner shall have authority to send a supervisor or supervisors as herein provided for to any county to make investigation of public school accounts,

records, and files of any county official handling school funds or administering the public school system and to enforce all school laws and regulations of the commissioner of education; provided, this duty of the commissioner shall not be exercised until after the county board of education shall have requested such investigation.''

■ The plain purpose of this section of the Code was to confer upon the State Commissioner of Education the authority to determine when any part of the school fund was in jeopardy, or being wasted, and it was left for him to decide, by and with the consent of the Governor, when to institute legal proceedings for the protection of school funds. The legislative intent was to prevent the squandering of school funds in unnecessary and often-times frivolous litigation, such as contests between school factions over the control of school boards, the election of teachers, and also the expenditure of school funds.

■ We are unable to give our assent to the contention of counsel for complainants that this code section was designed and intended only to apply to the institution of suits against third parties and ''not applicable to a situation involving in effect the Commissioner's own subordinate officials, and where there is a question of diversion of funds between different school districts. The cases cited by counsel, *Finney* v. *Garner,* 110 Tenn. 67, 71 S. W. 592, and *State* v. *True,* 116 Tenn. 294, 95 S. W. 1028, were decided many years prior to the passage of the Act of 1925. The latter case, however,, does not support the complainant's contention. There it was expressly held that, where the statute (Acts of 1897) authorized the State Superintendent of Public Schools to bring suit to protect school funds, or recover funds illegally disposed of, the Chairman of the County Court had no right to employ counsel for such purpose. Mr. Justice SHIELDS

there points out that in *State* v. *Mayor, etc., of Knoxville,* 115 Tenn. 175, 90 S. W. 289, "the decree was pronounced in favor of the state, for the use of public school funds of the state and county as their interests might appear upon a reference ordered." 116 Tenn. at pages 310, 311, 95 S. W. at page 1032. It was further held that there was no authority for the payment of counsel fees out of school funds, as is now contended by counsel in the instant case.

Under the General School Law of 1925, the entire school system of the state was completely integrated, the purpose being to have an eight months' school the year around. The various school districts in the several counties and cities of the state and special school districts were a part of a state-wide system of education. The funds apportioned to the several districts as provided by law did not become the property of the counties or the districts to which they were allocated, but continued to be the property of the State. It is true that certain officials were designated to apportion the funds, but the schools and the funds for their operation were inseparable and remained under the control and direction of the State Commissioner of Education. The Franklin Special School District never at any time had any vested property right or title in and to the funds sought to be recovered in this proceeding; nor did any other school district in the county have any property right in it. In *State ex rel.* v. *Meador,* 153 Tenn. 634, 635, 637, 284 S. W. 890, 891, it was held, "The public school system is a matter of state and not local, concern, and the establishment, maintenance, and control of the public schools is a legislative function." Also in *State* v. *True, supra,* it was said, "The public school funds in the hands of the trustees of counties are not the property of the counties, and their authorized agents have no control over them."

All funds that are provided by the State for school purposes remain the property of the State, and the several school districts throughout the state are not privileged to assert any beneficial interest therein, except through the State Commissioner of Education.

We do not wish to be understood as holding that the members of a school board are forbidden under any and all circumstances from suing to protect the school funds with which they have been entrusted. In emergency cases, where delay would result in loss of public funds, if the State Commissioner or his representative is not available, the suit should be in the name of the State for the use of the school whose rights are affected and the decree should be entered accordingly. In cases where the title to real estate is vested in a local school board, as in *Board of Education* v. *Shelby County,* 155 Tenn. 212, 217, 292 S. W. 462, it is a necessary party to the cause. Where a dispute over funds involves a question of school policy, the right to litigate it devolves upon the State Commissioner of Education, acting by and with the consent of the Governor.

In the instant case there was no emergency. The errors complained of, that is, the improper diversion of funds from the special school district to other school districts of the county had been going on for fifteen years, and furthermore, if there was an erroneous or illegal diversion, it resulted from the actual neglect of the local board of education. Moreover, there is no insistence by complainants that any of the school funds went to any purpose other than for the use and benefit of the public schools of the county. The bill fails to point out just how the alleged diversion of funds has injured the schools under the control of the board. There is not even a suggestion that the schools in this special school district

have not been in continuous and efficient operation for each and every school year from 1925 to and including 1941. There is no charge of any wrongdoing on the part of the county trustee or any school official except that F. J. Page, the county superintendent of schools, made a mistake in furnishing certain data to the trustee.

The complainant, the Board of Education of the Special School District, would now have this Court decree that the public school fund of Williamson County be required to account for $47,406.02, and that, if the general fund is not sufficient, a decree be entered against Williamson County for this amount. In other words, we are asked to penalize the school children of other school districts, or the taxpayers of the county, to recompense the special school district because of the mistake of its sole agent and representative, Mr. F. J. Page. This we decline to do. Since the issues involved affect the entire scholastic population of Williamson County, as well as the special school district, the right to litigate such questions must rest solely with the State Commissioner of Education and not the members of the Board of Education of the Special School District.

It is insisted by complainants that the state commissioner refuses to act to protect the fund in question, but there is no averment that he is a wilful wrongdoer in this regard. He can only act by and with the consent of the Governor, and there is no accusation that the Governor is guilty of any wilful neglect of duty.

We find it unnecessary to consider the defendants' second assignment of error. The question of defendants' right to plead estoppel to a possible suit that may be brought by the State's Commissioner of Education cannot be considered in this case. The decree of the chancellor is affirmed.