STATE *ex rel.* DOSSĒTT *et al. v.* OBION COUNTY *et al.*

(*Jackson,* April Term, 1949.)

Opinion filed June 10, 1949.

HEATHCOCK & ELAM, Union City, PAUL G. HUDGINS, Union City, for complainants.

MILES & MILES, Union City, for defendants.

542

Mr. Special Justice Williams delivered the opinion of the Court.

This is a suit brought in the Chancery Court of Obion County by the State of Tennessee upon the relation of Burgin E. Dossett, Commissioner of Education, for the use of the Board of Commissioners of Union City, a municipal corporation, and its Board of Education to recover from Obion County and its County Trustee in his official capacity certain high school funds, which it is claimed accrued to the municipality for high school purposes under Appropriation Acts of 1937, 1939, 1941, 1943 and 1945, based upon the average daily attendance of the city high school during the several school years referred to in said acts. The County Superintendent of Schools and the members of the County Board of Education were also made defendants.

The bill alleges that under the several acts, which were educational appropriation bills, payments on a *per capita* basis were due from the State and payable for each pupil in average daily attendance in the public high schools of counties, cities and independent school districts, and that such *per capita* payments were made by the State of Tennessee to the trustees of the various counties for distribution and payment to the counties, cities and independent school districts in the manner provided by law. It is alleged that the State of Tennessee paid to the Trustee of Obion County for the school years beginning with the year 1936-1937, and ending with the year 1946-1947, the sum of $21,069.16, which was due, under the law, to be paid to the Board of Commissioners of Union City, but that the County Trustee, instead of distributing and paying this sum to the Commissioners

of Union City, paid over all of said funds to the Board of Education of Obion County, which in turn appropriated and used them in the operation of the county schools to the complete exclusion of the high school operated by the municipality.

The complainant sought to recover these funds from school money in the hands of the County Trustee, or from Obion County if there were insufficient funds in the hands of the Trustee to satisfy the judgment. No personal judgment was sought against the Trustee, the County Superintendent or the members of the County Board of Education.

Two demurrers were interposed, one jointly by the County and its Trustee and the other by the school officials of the County. The Chancellor overruled the demurrers but allowed an appeal to this court. The assignments of error relate to the action of the court in overruling each of the several grounds of the demurrers.

The first ground of the demurrer filed by the County and its Trustee is merely that the bill states no legal cause of action. Being general in its nature it need not be further considered. Code of Tenn. Sec. 8784; Gibson's Suits in Chancery, Sec. 301.

The second ground of demurrer is that the State of Tennessee cannot maintain this suit for the use and benefit of the Board of Commissioners of Union City or its Board of Education and that the suit, if maintainable at all, could be maintained by the State only for its own use.

Section 2314(16) of the Code of Tennessee provides:

"Whenever it shall appear to the commissioner of education from the report of any school official or from any other reliable source that any portion of the school

fund has been lost, misappropriated, or in any way illegally disposed of, or not collected, or is in danger of loss, misappropriation, illegal disposition or failure of collection, it shall be the duty of the commissioner to call upon the district attorney or county judge or chairman of the county court, or the county attorney, to protect, recover, or force collection of such funds, provided the governor shall first give his approval to such action.''

■■ It is true that this statute contemplates that a suit brought under its provisions shall be considered a proceeding by the State to protect its own interest. That, however, is what this suit is. The fact that the State is going to use some subordinate governmental instrumentality to expend the state funds when they are recovered does not make the proceeding any less a suit by the State in its own right. The following quotations from a late case make this apparent:

''The funds apportioned to the several districts as provided by law did not become the property of the counties or the districts to which they were allocated, but continued to be the property of the State. It is true that certain officials were designated to apportion the funds, but the schools and the funds for their operation were inseparable and remained under the control and direction of the State Commissioner of Education. . . .

''All funds that are provided by the State for school purposes remain the property of the State, and the several school districts throughout the state are not privileged to assert any beneficial interest therein, except through the State Commissioner of Education.'' *Garner et al.* v. *Scales et al.*, 183 Tenn. 577, 587, 194 S. W. (2d) 452, 456.

The statement that the recovery of public school money is for the uses and benefit of some particular governmental agency of the State will not keep the bill from being construed as one by the State to control the distribution of state appropriations. If the State failed to allege that its own interests were involved in the suit which it brought also in behalf of its subordinate agencies, the purpose of suit will allow no other construction. The fact that the State does not ask that the funds be paid back into the state treasury but only paid to those for whom they were originally intended, does not operate to strip the State of its actual interest in the lawsuit. The joinder of the subordinate instrumentalities of government in such suits as this has been recognized. Thus in a somewhat similar case this court said:

"The decree of the Chancellor is affirmed, save that the recovery here will be in favor of the state, for the use of the common school fund of the state and county, as their interests may appear on a reference, for the making of which the case is remanded." *State* v. *Knoxville*, 115 Tenn. 175, 90 S. W. 289, 294.

We therefore hold that this is a suit by the State of Tennessee and for the State of Tennessee, notwithstanding the fact that under the provision of the law the State is to employ the municipality and its Board of Education to manage the application of the proceeds of the suit. If the bill had said nothing about turning over the money recovered to the Board of Commissioners, the State, nonetheless, would do so, not because the money recovered belongs to the Board of Commissioners in any proprietary capacity, but, because the Board is charged with the performance of certain governmental duties and the money sought to be recovered is that

546

which by provision of law was allocated to be used by the municipality.

The third ground of the demurrer is that the funds sued for are not shown to be in the hands of the County Trustee, but have been spent in the operation and the conduct of the high schools of Obion County, without injury to the Union City High School.

Since the bill does not aver that the Union City High School has suffered from inefficient operation because of the withholding of funds received by the County, the demurrants assume that they are entitled to read into the bill the contrary state of facts. This does not follow. Withholding from a school district money to which it is entitled for the operation of its schools is in itself an injury.

The fourth ground of demurrer is that the bill fails to show that any demand was made for the funds sued for and that the Board of Commissioners acquiesced without protest in the distribution as made by the County Trustee.

Since the bill does allege that the money has been retained ''notwithstanding demand has been made by the Board of Commissioners for the payment of the same, upon the County of Obion through the Honorable A. L. Burrus, County Judge, and upon J. H. Shore, Trustee of Obion County, Tennessee, and upon the Board of Education of Obion County, Tennessee, through Milton Hamilton, County Superintendent,'' we interpret the demurrants' point to be that no demand was made year by year as the funds were received. Such demand was unnecessary. All parties were charged with a knowledge of the law. It avails the defendants nothing that the Board of Commissioners did not protest at the time

each apportionment was due. The members of the Board had no authority to acquiesce in any action which deprived the municipality of its rights. "The doctrine of estoppel by 'customary action' does not . . . apply to acts of public agents." *Elliott Nat. Bank* v. *Western, etc., Railroad,* 70 Tenn. 676.

The fifth ground of the demurrer challenges that part of the bill which seeks to satisfy any judgment obtained out of the current school funds in the hands of the Trustee "to the detriment, hurt, injury and deprivation of the high school pupils of Obion County."

It is certainly not alleged in the bill that the satisfaction of this judgment from the school funds will be "to the detriment, hurt, injury and deprivation of the high school pupils of Obion County." The statute under which this suit was brought contemplated that no such case would be pursued in a manner to deprive any child in Tennessee of the right to his schooling. That presumably is one of the reasons why the statute provides that ordinarily no suit of this nature may be brought except by the Commissioner of Education with the consent of the Governor.

This reasonable precaution would seem sufficiently to forfend against oppressive actions to the detriment of any subdivision of the State's educational system. The Legislature thought that this would be protection enough against the possibility that a suit to correct an error might be attended by more disadvantage than good. The Governor and Commissioner of Education are executive officials, charged with protecting the interests of all educational groups and institutions and to them first is addressed the question of whether under all the circumstances in a particular case it is better to let the

results of a mistake rest where they are or to undertake to correct them. There may be cases where the State's own interest in the education of all its children will not be served by trying to undo the results of a mistake long past or to restore a condition interfered with by faulty administration. If in such an instance the last estate of the sovereign's interest will appear to be worse than its first, the Governor of the State has it within his discretion to cover the whole controversy with the mantle of repose.

In this case if such a state of affairs existed, argument might be made either to the administrative branch of the government in which is vested the authority to bring such a suit or to refrain from doing so, or, in the name of necessity and public policy, even to the judicial arm of the government. But there is nothing in the bill to support the supposition that great public misfortune will follow in the train of the State's demand in this lawsuit.

As one court has remarked in regard to a similar argument made by a school district, forcing a debtor to pay his debt necessarily deprives him of some advantages he has previously enjoyed but cannot on that account be successfully advanced as a reason for exemption or discharge from paying his debt when hailed into court to answer why he does not do so. *Independent Districts* v. *Common School Districts*, 56 Idaho 426, 55 P. 24, 144, 105 A. L. R. 1267.

The sixth ground of the demurrer relies upon the statute of limitations as a bar to a recovery of so much of the funds sued for as are shown by the bill to have accrued six years prior to the institution of this suit. Since it is our view that this is a suit by the State itself

and for its own purposes, it follows that the statute of limitations is not applicable. Code of Tennessee, Sec. 8579; *Hake* v. *Warren*, 184 Tenn. 372, 199 S. W. (2d) 102.

The seventh ground of the demurrer is directed at that part of the bill seeking recovery for the school years 1943-1944, 1944-1945, 1945-1946 and 1946-1947, on the ground that the educational appropriation acts covering the distribution of school money for these years do not provide that city high schools shall necessarily participate in the high school appropriations of the State. The position of the complainant is that a fair reading of the acts in the light of their history and purposes requires such an interpretation.

This seems to us the most difficult question in the lawsuit and arises from the fact that the Acts of 1943 and 1945 concerning the apportionment of funds omitted some of the important provisions of the educational appropriation acts of earlier years.

The Educational Appropriation Act of 1937 contained the following provisions:

"Sec. 7. Be it further enacted, That there is hereby appropriated seven hundred fifty thousand dollars ($750,000) per annum for the purpose of aiding counties in maintaining high schools. This fund of seven hundred fifty thousand dollars ($750,000) shall be distributed as follows:

"(a) Ninety-five thousand dollars ($95,000) shall be set aside during each year for county high schools and shall be distributed equally among the ninety-five counties of the State and shall be paid in nine equal monthly installments beginning September 1 of each year.

"(b) Six hundred forty-eight thousand dollars ($648,-000) shall be set aside during each year as a *per capita*

fund, to be distributed among the several counties, cities, and independent school districts, maintaining high schools, in proportion to the average daily attendance maintained by them in public high schools, provided, That all high schools participating in this fund of six hundred forty eight thousand dollars ($648,000) shall comply with all the regulations prescribed by the State Board of Education applicable to approved high schools". Pub. Acts 1937, c. 127, Sec. 7.

The Educational Appropriation Acts of 1939, c. 16, and 1941, c. 8, contained similar language as to the distribution of the funds appropriated. In 1943, however, the Legislature, in making an appropriation for high schools, omitted the express requirement that the funds should be distributed to the "cities and independent school districts, maintaining high schools, in proportion to the average daily attendance" in their high schools, and used merely the following language:

"Sec. 8. Be it further enacted, That there is hereby appropriated one million two hundred sixty thousand dollars ($1,260,000.00) *per annum* for the purpose of aiding counties in maintaining high schools. This fund of one million two hundred sixty thousand dollars ($1,260,000.00) shall be distributed as follows:

"(a) The sum of ten dollars ($10.00) *per capita* for each and every child in average daily attendance in the public high schools in counties, cities, and independent school districts of the State shall be distributed to each county, and shall be paid in nine (9) equal monthly installments beginning the first day of September of each year." Acts of 1943, Chapter 1, Sec. 8.

Except for the amount appropriated, the act of 1945 employed the same language. Public Acts of 1945, Chapter 180, Sec. 8.

In the history of school legislation in Tennessee it is not novel for funds to be distributed to counties upon a *per capita* basis without the requirement that they be used on that basis after they have reached the county. In 1919, when the State adopted the policy of collecting into the state treasury a property tax for school purposes, it was provided that a part of the proceeds be distributed among the counties on a *per capita* basis. Public Acts of 1919, Chapter 111, Sec. 7. Two years later the method of apportioning a part of state school funds to the counties was placed upon a basis of average daily attendance. Public Acts of 1921, Chapter 118, Sec. 4. This was still a *per capita* distribution, although the number of heads to be counted were those of persons in actual attendance rather than potential attendance.

In the sections of the Educational Appropriation Acts of 1943 and 1945 now under consideration it is merely said that a certain sum *per capita* "for each and every child in average daily attendance in the public high schools in counties, cities, and independent school districts of the State shall be distributed to each county," and no requirement is in express words put upon the several counties as to how such funds shall be redistributed among the high schools operating in the counties. While it would be a misappropriation of such funds for counties to use them for anything other than high school purposes, it does not necessarily follow that they must be used for the several high schools in proportion to the *per capita* attendance of such schools or distributed

among cities and special districts in the counties upon a basis of *per capita* attendance.

It is argued that it is eminently fair for the counties to be required to distribute on a *per capita* basis to the cities and special school districts within their borders the funds they have received from the State upon a similar basis. This proposition can hardly be disputed as a matter of policy, but the question here is not what the Legislature might have done in pursuit of sound policy, but what it did do by express words or necessary implication.

We cannot find in either the Act of 1943 or the Act of 1945 any express requirement that the moneys received by the several counties upon a *per capita* basis shall be distributed by them on such a basis or used by them in the maintenance of high schools in proportion to the number of persons in attendance. Also we have searched in vain for some expression in each of these acts from which such a legislative purpose may be implied under the established rules of judicial interpretation. We cannot speculate upon legislative intent. The fact remains that the language requiring the distribution compelled by the Acts of 1937, 1939 and 1941 was removed from the subsequent acts under consideration, and we must presume removed deliberately.

It therefore follows that Obion County was not required by law to make a distribution of the funds received under the 1943 and the 1945 acts upon a *per capita* basis to the Board of Commissioners of the complainant municipality, and that the seventh ground of the demurrer must be sustained.

The separate demurrer of the Superintendent of County Schools and the members of the County Board

of Education raises the question that no relief is sought against these parties and that therefore they are not properly joined in the suit. "It is a well known principle that proper parties include all who must be bound by the decree to make the decree finally effective and so to avoid recurrence of litigation on the same subject." *City of Knoxville et al.* v. *Peters et al.*, 183 Tenn. 93, 1791 S. W. (2d) 164, 166.

"There is no inflexible rule as to joinder in equity suits of those who are proper rather than necessary parties, and the court exercises a large discretion in determining who are properly to be joined, choosing that course which seems most likely to enable it to do equity in the particular case, with least expense, delay and trouble, striving on one hand to obviate the necessity of multiplicity of suits and on the other to avoid vexing individual defendants with litigation of questions with which they have no concern. While the modern practice statutes have to a large extent incorporated the principles of equity practice governing parties, it is still apparent by a reading of the decisions in equity cases that a greater liberality is exercised in respect of those who may be made parties. It has been said that 'Every case must be governed by its own circumstances; and as these are as diversified as the names of the parties, the court must exercise a sound discretion on the subject.' " 39 Am. Jur., Parties, Par. 27. See also *Gaines* v. *Chew*, 2 How. 619, 11 L. Ed. 402; Annotation, 15 Am. Dec. 427, 428.

Moreover, while the bill in the present cause does not pray a particular relief against the County Superintendent and the members of the County Board of Education, it does embrace a prayer for general relief, which might conceivably authorize a decree by which the indi-

vidual defendants ought to be bound, depending of course upon the proof developed during further progress of the case. Therefore the discretion exercised by the Chancellor in allowing the individual defendants to remain parties will not be disturbed on this appeal.

It results that the demurrer of these defendants is overruled.

For the foregoing reasons the action of the Chancellor is affirmed in requiring the defendants to answer further upon all questions except those precluded by the seventh ground of the demurrer filed by Obion County and its Trustee. Since no statute required Obion County to pay over to the municipality upon a *per capita* basis the funds received by the county under the Acts of 1943 and 1945, the demurrer of the County and its Trustee is sustained in so far as it challenges the claim of the municipality for funds received by the County under the provisions of these acts. The case will be remanded for further proceeding in accordance with this opinion.

All concur.