IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 26, 2003

## RICHARD HUGHEY v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Appeal from the Chancery Court for Davidson County**
**No. 02-704-I    Irvin H. Kilcrease, Jr., Chancellor**

————

**No. M2002-02240-COA-R3-CV - Filed August 8, 2003**

————

Richard Hughey, a former Metropolitan Nashville police officer, appeals the action of the Chancery Court of Davidson County in affirming the adverse decision of the Metropolitan Civil Service Commission, which had rejected his application for police department employment. We affirm the action of the Chancellor.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Phillip L. Davidson, Nashville, Tennessee, for the appellant, Richard Hughey.

Karl F. Dean and William Michael Safley, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County.

### OPINION

Richard Hughey was first employed by the Metropolitan Police Department in January of 1981. He was originally disqualified from employment due to a color vision deficiency. He applied for a waiver of this disqualification, which waiver was granted on September 23, 1980.[1] This letter disclosed:

The following is an excerpt from the Minutes of the Meeting of the Civil Service Commission held September 23, 1989:

---

[1] The letter to him from the Civil Service Commission acknowledging this waiver is dated September 24, 1980 and refers to a meeting of the Civil Service Commission held September 23, 1989. It is obvious that this date is in error, and the Civil Service Commission meeting was actually held September 23, 1980.

"Mr. Bailey made a motion, that the Commission grant H. Philip Sadler's, Attorney for Mr. Richard Allen Hughey, Police Officer Trainee applicant, request for waiver of Mr. Hughey's disqualification (vision) and that he be allowed to continue in the examination process. Seconded by Mr. Pilkerton and approved by the Commission unanimously."

Mr. Hughey suffered an on-the-job injury in 1993 and was placed on a disability pension. On October 3, 2000, Mr. Hughey accepted employment as a patrol/K-9 officer for the City of Lavergne Police Department. His desire, however, was to return to his position with the Metropolitan Nashville Police Department, and that desire is best stated in his letter to the Metropolitan Civil Service Commission dated January 2, 2002:

Dear Civil Service Commission,

I'm writing this letter because of a color deficiency, according to Dr. Jack Corban, Metro Civil Service medical examiner in 1980.

I had to get a waiver approved prior to my appointment as a Metro police officer in January of 1981. The Civil Service Commission unanimously approved my waiver.

I was injured while on duty as a Metro police officer in 1993. I had to take a disability pension in that same year. I've been trying to return to the Metro Police Department since 1995, but I haven't been able to do so.

I was contacted recently by Metro police personnel concerning a lateral transfer class that's scheduled to begin on Feb. 19, 2002. I would very much like to be in that class, I must first get a waiver on the color aspect of the vision test.

I'm once again requesting a waiver from the Civil Service Commission.

It should also be noted, that I've been working as a patrol/K-9 officer for the Lavergne Police Department since October 3, 2000. During my entire career, both as a Metro officer and Lavergne, not once has color been an issue. I've testified in court and I've always been able to identify either colors of vehicles, clothing, property, etc. without any difficulty!

Sincerely,
Richard Alan Hughey

At the time of the application by Mr. Hughey to resume his employment as a police officer with Metropolitan Government, Civil Service Commission policy required normal color vision as determined by Army Regulation 40-501. The applicable army regulation provided: "Although there is no standard, color vision will be tested, since adequate color vision is a prerequisite for entry into many military specialities. However, for entrance into the USMA or Army ROTC or OCS programs, the inability to distinguish and identify without confusion the color an object, substance, material, or light that is uniformly colored a vivid red or vivid green is disqualifying." The Civil Service

Commission rules provided: "A member of the Police Department (Civilian or Sworn) who is on leave for six months or longer or has terminated from employment for any period will be required to successfully complete a polygraph examine and physical examine before returning to work." It was further provided by Section 7.8 of the Civil Service Commission rules that, "any officer who leaves the Metropolitan Police Department must meet the requirements of state law (TCA 38-8-106 or as amended), before he can be considered for re-employment." Tennessee Code Annotated section 38-8-106 states that any individual employed as a full-time police officer shall " have passed a physical examination by a licensed physician."

When Mr. Hughey took his physical examination, he was unable to pass the portion of the exam dealing with color vision. The examining doctor reported to the Civil Service Commission:

> Mr. Richard Hughey was seen in the Civil Service Clinic on December 28, 2001, for a return to work evaluation relative to the discontinuation of his disability pension from the Metropolitan Police Department.
>
> The color vision test was performed and Mr. Hughey missed nine (9) of the fourteen (14) plates, which indicates a failure of that exam. Therefore, he is disqualified from employment as a police officer, based on the current color vision requirement.

In a hearing before the Civil Service Commission held February 12, 2002, the Commission unanimously declined to grant a waiver to Mr. Hughey of the color vision disqualification, and Mr. Hughey timely appealed the action of the Civil Service Commission to the chancery court.

The chancellor dismissed the appeal by Order dated September 3, 2002, based upon an August 15, 2002 Memorandum Opinion, providing in pertinent part:

> The Petitioner contends that the Metropolitan Police Department acted in an arbitrary and capricious manner when it denied his request to waive the vision requirement for employment as a Metropolitan Police officer. The Petitioner made application for the Lateral Entry Class with the Metropolitan Police Department after having been on disability pension leave. However, he could not pass the vision requirement of the physical examination due to a deficiency in his color vision. The Petitioner believes that the Respondent should have waived this requirement as it did when he sought employment with the Metropolitan Police Department in 1981. This refusal, according to the Petitioner, supports that the Respondent acted arbitrarily and capriciously in disqualifying him from employment with the Metropolitan Police Department.
>
> When determining if a decision was arbitrary or capricious, the court must determine "whether the administrative agency made a clear error in judgment." *State ex rel Nixon v. McCanless*, 141 S.W.2d 885, 886 (1940). "An arbitrary decision is one that is not based on any course of reasoning or exercise of judgment, or one that disregards the facts or circumstances of the case without some basis that would lead

reasonable persons to reach the same conclusion." *Jackson Mobilphone Co. v. Tennessee Public Service Commission*, 876 S.W.2d 1206, 111 (1993).

When the Respondent denied the Petitioner's request for a waiver of the vision requirements for employment with the police department, it followed the statutes and Civil Service Commission rules. Although the Respondent may have waived this requirement in 1981, the policies and procedures applied in this instance do not require the Respondent to make a decision based on its actions in the past. This Court must determine whether the Respondent, in this instance, acted illegally or failed to follow the statutes and Civil Service Commission Rules. The Petitioner has not presented sufficient proof that the Respondent acted arbitrarily and capricious in denying his request for a waiver. The Respondent made a reasoned decision based upon the statutes and Civil Service Commission Rules.

Therefore, the Petitioner's argument that the decision was arbitrary and capricious is without merit.

Mr. Hughey filed a timely appeal to this Court.

SCOPE OF REVIEW

The review by the Court in this matter is limited. As set out in Tennessee Code Annotated section 27-9-114(b)(1), judicial review of decisions by Civil Service boards of a county or municipality that affect the employment status of a county or city civil service employee shall be in conformity with the judicial review standards under section 4-5-322 of the Uniform Administrative Procedures Act. The Uniform Administrative Procedures Act, in Tennessee Code Annotated section 4-5-322(h)(Suppp.2001), provides:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
(1)     In violation of constitutional or statutory provisions;
(2)     In excess of the statutory authority of the agency;
(3)     Made upon unlawful procedure;
(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)     Unsupported by evidence which is both substantial and material in the light of the entire record.

It has been held in *Metropolitan Government of Nashville and Davidson County v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977), that "[i]t is clear from the language of the statute that the review provided in the chancery court is in no sense a broad, or de novo, review. Review is confined to the record made before the agency, except in cases of 'alleged irregularities in procedure before the agency, not shown in the record . . . .' " In discussing the scope of review, the Supreme Court of

Tennessee further set out in *CF Industries v. Tennessee Public Service Commission*, 599 S.W.2d 536, 540 (Tenn. 1980), that "[i]t is restricted to the record and the agency finding may not be reversed or modified unless arbitrary or capricious or characterized by an abuse, or clearly unwarranted exercise, of discretion and must stand if supported by substantial and material evidence."

No issue is made in this record of the competency or the record of service of this veteran police officer. From all that appears in the record, his life has been one of dedicated and competent service. He simply has a color vision problem that, under Civil Service Commission rules and regulations, disqualifies him from service as a police officer. Any success that he might have in the courts is dependent upon the effect, if any, of the previous waiver granted to him by the Civil Service Commission in 1981 and a finding that, somehow, the color vision disqualification itself is arbitrary and capricious.

Under the limited standard of review to which he is entitled upon this appeal, no authority is offered by Appellant that the color vision standards envisioned in the regulations, which are the same standards governing military service, are themselves arbitrary or capricious.

Appellant asserts the 1981 waiver as working an estoppel upon the Civil Service Commission as to disqualifying him by reason of color vision. The doctrine of estoppel cannot be expanded in such a manner.

> The rule in this State is that the doctrine of estoppel generally does not apply to the acts of public officials or public agencies. *See e.g. State ex rel. Moulton v. Williams*, 207 Tenn. 695, 343 S.W.2d 857 (1961); *State ex rel. Dossett v. Obion County*, 188 Tenn. 538, 221 S.W.2d 705 (1949). That is the rule in the majority of jurisdictions. Public agencies are not subject to equitable estoppel or estoppel in pais to the same extent as private parties and very exceptional circumstances are required to invoke the doctrine against the State and its governmental subdivisions. *See* 31 C.J.S. Estoppel § 140 pp. 691-692.

*Bledsoe County v. McReynolds*, 703 S.W.2d 123, 124 (Tenn.1985).

The judgment of the trial court is in all respects affirmed, and costs on appeal are assessed to Appellant.

_____
WILLIAM B. CAIN, JUDGE